ALICE DUGGAN, Respondent, *v.* CHARLES H. PLATZ and Another, Appellants, Impleaded with JOSEPH McDONOUGH COMPANY, Defendant.

Third Department, May 10, 1933.

*Whalen, McNamee, Creble & Nichols* [*Robert E. Whalen* of counsel], for the appellants.

*Roscoe Irwin*, for the respondent.

HEFFERNAN, J.  Respondent brought this action in equity to rescind on the ground of fraud a contract made between her and the appellant Charles H. Platz by virtue of which he and his wife, appellant Elizabeth J. Platz, acquired seventy-six shares of the capital stock of the defendant company.  The stock which appellants thus acquired gave them dominion of the corporation.

In her prayer for relief respondent asked a rescission of the contract, a retransfer of the stock to her and a judgment directing appellants to account to her and to the company for profits realized by them.

The same attorneys appeared for appellants and the defendant company and by a joint answer put in issue the allegations of the complaint as to fraud and also alleged as a defense that respondent has an adequate remedy at law.  The cause was sent to a referee to hear and determine.

The referee resolved the issue of fraud in respondent's favor. He found, among other things, that the contract made between respondent and appellant Charles H. Platz on May 1, 1919, for the transfer by her to appellants of seventy-six shares of the capital stock of the defendant company which she owned was the result of fraud perpetrated upon respondent by appellants by reason of a preconceived intent and design on their part to cheat and defraud respondent out of the stock in question.  It is quite significant that appellants have not appealed from that adjudication. Respondent entered final judgment on the decision of the referee and included therein a provision for costs in her favor.

Appellants on this appeal seek to reverse so much of the judgment as denies to them an accounting and also the determination that respondent is the owner of the stock which appellants obtained under the guise of fraud, without making restitution to them.

They have also appealed from an order denying their motion to eliminate from the judgment the provision for costs.

To understand the questions involved it is necessary to refer to the history of the defendant company and its founder. In 1870 Joseph McDonough established in the city of Albany a business of buying and selling old and new books. He conducted the business as an individual until 1906, when he incorporated the defendant company, and to which he transferred all the property and assets owned and used by him in connection with the business. The authorized capital stock of the corporation was 150 shares of the par value of $100 each, of which 139 were issued to Joseph McDonough, 10 to respondent and 1 to appellant Charles H. Platz. The one share of stock which Platz received and for which he paid nothing was issued to him so that he could qualify as a director. He retained this share of stock until his employment with the corporation was terminated, at which time he transferred it to Mr. McDonough in consideration of fifty dollars worth of books. In April, 1917, Joseph McDonough died leaving a will wherein he bequeathed to respondent, his niece, who had been associated with him in business since 1905, all of his stock in the corporation. This transfer made respondent the sole owner of all the stock of the company and she conducted its affairs until 1919.

The referee found that in the spring of that year appellant Charles H. Platz, who was then employed by the United States government as an internal revenue agent, orally agreed with respondent that he would resume his connection with the business which he severed in 1913, that he would devote his entire time and attention thereto and resign his position with the United States government, in consideration of which he should receive seventy-five shares of the capital stock of the corporation and that his wife should receive one share. Respondent accordingly transferred the stock. This representation was false and the intent fraudulent. Appellants do not dispute that the only consideration for the transfer of this stock was the agreement of Platz to resign his position and devote his entire time to the business of the company. The referee has also found that Platz never resigned his position with the United States government and that he failed and refused to perform his agreement with, and to conform to his assurances made to, respondent. Platz himself testified that his hours of employment in the government service were from nine A. M. to five P. M. in winter and from nine A. M. to four-thirty P. M. in summer and that he actually devoted that particular time daily to his duties. He also testified that the only service which he rendered to the company was in an advisory capacity.

Appellants strenuously urge that the judgment should have provided for an adjustment of the equities between the parties.

In May, 1922, defendant company purchased premises on State street to which place the business was removed. Respondent and appellants established respective residences there without the payment of any rent. Bills for light, heat and water for the benefit of all parties were paid by defendant corporation. This arrangement continued until the trial of this action, a period of ten years.

From 1920 to 1929, with but three exceptions, the business of the company was conducted at a loss.

From the date when she and her husband obtained control of the company Mrs. Platz was employed in the business as a saleswoman. For her services she was paid a salary of $5,727.

It would serve no useful purpose to analyse in detail the alleged equities in favor of appellants. I shall refer briefly to the principal ones.

Platz claims that in furtherance of the company's business he discontinued his own book business and delivered to the corporation his stock of books, which he said was worth $3,000, and also his mailing list. In his testimony he admitted, however, that he brought his books to the company voluntarily and that they were never entered in the accounts of the corporation. He also claims that he expended from his own funds $1,200 for renovations in the premises where the company's business was conducted. It appears from his own testimony that whatever expenditures he made were for renovations in that part of the company's premises which he and his wife occupied. He concedes that these expenses were voluntarily made and obviously they were for his own benefit. He and his wife did lend their accommodation indorsement to the company's note for $2,500 and to a series of renewals thereof, the avails being applied to the purchase price of the building occupied by the company. This note was paid, however, out of the company's funds.

I do not question the correctness of the proposition asserted by Presiding Justice HILL in his opinion, that a " ' party who would disaffirm a fraudulent contract must return whatever he has received upon it.' " The cases upon which appellants rely constitute good law, but they have no application to the facts in this case. Respondent received nothing which she is obliged to restore. Appellants have had complete control of the company since 1919. All the alleged equities claimed to exist in favor of appellants comprise matters occurring subsequently to the fraud which they perpetrated upon respondent and constitute no part of the consideration for the transfer of the capital stock. We have already shown what

the consideration for the transfer was. The basis of the alleged equities is an outgrowth of their own fraud. In fact none of the transactions involved in the equities claimed for appellants would have occurred were it not for the fraud which they practiced upon respondent. There is nothing to be restored to appellants. Concededly they never paid a dollar for their stock nor expended anything in connection with the conduct of the business. The benefits which they have received more than offset any equities that may exist in their favor. For years they enjoyed the fruits of their fraud. They occupied without expense desirable quarters in the company's building; their domestic expenses were paid out of the company's funds; the husband maintained an office for his own private business and meanwhile the wife was receiving a substantial salary from the company's treasury.

There is no evidence in the record which justifies the position of appellants. They do not come into court with clean hands; they are not innocent of any participation in a wrong. Equity will refuse to aid one whose appeal to it offends the conscience. (*Unckles* v. *Colgate*, 148 N. Y. 529; *Rubin* v. *Yedlin*, 224 App. Div. 768.) If appellants have suffered any loss, which is extremely doubtful, it is a loss occasioned by their own fraud. Their fraudulent acts and conduct offend justice and conscience, " and upon the principles of eternal justice whatever consequences may follow * * * should rest on the head of the offender alone." (*Masson* v. *Bovet*, 1 Den. 69.) If appellants cannot be restored to their original position they have no one to blame but themselves. Respondent is not responsible for that and it is no defense to her claim for a rescission. The law cares very little what a fraudulent party's loss may be, and exacts nothing for his sake. It certainly will not undertake to indemnify him for expenditures made in the prosecution of his fraudulent purpose. (*Masson* v. *Bovet, supra; Guckenheimer* v. *Angevine*, 81 N. Y. 394.) Relief should not be denied an innocent party simply because the one who conceived and perpetrated the fraud and profited thereby cannot be restored to his former position; and the fact that the wrongdoer may suffer will not deter equity from granting relief to the injured party. (*Hammond* v. *Pennock*, 61 N. Y. 145; *Parton* v. *Metropolitan Life Insurance Co.*, 129 Misc. 493; affd., 224 App. Div. 672; *Ring* v. *Ring*, 55 Misc. 420; affd., 127 App. Div. 411; affd., 199 N. Y. 574; 9 C. J. 1210.)

Emphasis is laid on the fact that the referee stated that the question of an accounting was held for future determination. What he had in mind, as evidenced by his opinion, was respondent's right to an accounting from appellants. She chose to forego that right and on the argument before us her counsel expressly waived

her claim to that relief. It is obvious, therefore, that all the issues in this case have been determined and the entry of final judgment was proper.

Although convicted of cheating respondent, appellants insinuate that they are entitled to equitable intervention. This record tells another story. It is impossible to escape the conclusion that these appellants animated by sordid and selfish motives and actuated by greed, through fraud and deceit, stripped this respondent in her declining years of practically all her possessions. Their plea is utterly devoid of justice and should fall on deaf ears.

The judgment and order appealed from should be affirmed, with costs and disbursements, without prejudice, however, to any rights which appellants may have to an accounting from defendant company.

RHODES and CRAPSER, JJ., concur; HILL, P. J., dissents, with a memorandum.

HILL, P. J. (dissenting). The defendants, Charles H. Platz and his wife, Elizabeth J. Platz, appeal from a portion of a judgment in plaintiff's favor entered upon a decision made by a referee, wherein it was determined that, because of defendants' fraud, she was entitled to have rescinded a contract made in May, 1919, where-under she transferred to these defendants seventy-six out of a total of one hundred and fifty shares of the capital stock of the corporate defendant. The report and decision of the referee contains the recital: " The undersigned further reports that in pursuance of the stipulation of the parties hereto, the matter of an accounting herein is held for future determination." Notwithstanding this, plaintiff has entered a judgment purporting to determine and adjust finally and fully all matters between the parties. It awards final costs of the action. The personal defendants appeal from so much of the judgment as directly or by implication determines that there shall be no accounting between the parties, and that plaintiff becomes the owner of the seventy-six shares without making restitution to defendants after and if an accounting discloses that equitably restitution should be made. There is a second appeal from an order denying defendants' motion to eliminate the item of costs from the judgment.

The corporate defendant was organized by plaintiff's uncle to take over the business of buying and selling new and used books which he had conducted in Albany for many years. Upon the incorporation he became the owner of all the capital stock which upon his death in 1917 passed under his will to the plaintiff. The defendant Charles H. Platz was in his employ for several years

up to 1913. In 1919 Platz was the owner of a book store also located in Albany, which was managed by his wife, the other defendant, while he devoted his time during the business hours of the day to his employment in the internal revenue department of the United States government. It was arranged between the parties that the plaintiff should transfer to Platz and his wife seventy-six shares of the capital stock of the corporate defendant. In return, Platz was to assume such management of the business as his work would admit. This he did, but plaintiff states, and the referee found, that he agreed to resign the government position soon after 1919 and devote all his time to the book business. His refusal to resign was found to be fraudulent and to justify plaintiff's demand for recission. While defendant upon the trial denied that he agreed to resign, he does not appeal from the finding. It may be pertinent as bearing upon his equitable right to an accounting to mention that plaintiff says and it was found that he refused definitely and finally to resign and to devote all his time to the business in the year 1925. She, it seems, thereafter accepted for the corporation and for herself indirectly, the benefits accruing from his continued management until 1930 when this action was brought.

He who seeks equity must do equity. Making more specific application of this oldest of the generic principles of equity, I quote from the opinion in *Masson* v. *Bovet* (1 Den. 69, 74): " The party who would disaffirm a fraudulent contract must return whatever he has received upon it. This is on a plain and just principle. He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue, but must rescind in *toto*, if at all. * * * To retain the whole, or a part only of what was received upon the contract, is incompatible with its rescission; and hence the necessity of restoring what had been received upon it." Mr. Justice Holmes in *Stoffela* v. *Nugent* (217 U. S. 499) said: " It is true that the defendant acted fraudulently and knew what he was about. But a man by committing a fraud does not become an outlaw and *caput lupinum*. * * * He may have no standing to rescind his transaction, but when it is rescinded by one who has the right to do so, the courts will endeavor to do substantial justice so far as is consistent with adherence to law." The opinion in *Gould* v. *Cayuga County National Bank* (86 N. Y. 75) states (at p. 79): " It is a general rule laid down in the text books and reported cases that a party who seeks to rescind a contract into which he has been induced to enter by fraud must restore to the other party whatever he has obtained by virtue of the contract. * * * He cannot retain any thing he received under the contract and yet proceed in disaffirmance thereof." To supplement these citations by similar statements made more recently is unnecessary.

There have been transactions between these parties based on the 1919 contract for more than ten years. An accounting in relation to and in reconciliation of the respective charges and contributions is necessary. Without seeking to catalogue the several items which should be considered, the evidence discloses that defendant with no consideration other than the transfer of the capital stock by plaintiff, mingled the books, mailing lists and all of the assets of the business which he owned in 1919 with those of the corporate defendant. During the entire period he has assisted in the management of the business. His wife, with plaintiff's consent and approval, has worked actively in the store. A portion of her salary remains unpaid. Plaintiff has been paid a salary by the corporate defendant or has taken credit upon its books. The funds available for these salaries have been provided from the sale of books, some of which came from the defendants' store. Plaintiff and defendants have had separate living quarters in the building belonging to the corporate defendant. There was no necessity for an accounting until the issue of the claimed fraud had been decided. Had the defendants prevailed on this issue, none would have been necessary at any time, but now under the pleadings it is not only proper but defendants' right to an accounting and the incidental restitution for benefits the plaintiff and the corporate defendant have received, if any.

The judgment following the determination of the fraud issue should have been made interlocutory with the final award of costs in the final judgment following the accounting. The motion to eliminate costs from the judgment appealed from should have been granted. (*Osborn* v. *Cardeza*, 180 N. Y. 69; *Twin Realty Corporation* v. *Glens Falls P. C. Co.*, 225 App. Div. 515.)

The judgment should be modified and in part reversed on the law and facts, with costs to the appellants, by striking therefrom the provision as to recovery of costs and by including a recital that the judgment is interlocutory, and a direction that an accounting be had between the parties and that the seventy-six shares of the capital stock of the corporate defendant now in the possession of the Albany county clerk be delivered to the plaintiff, upon the filing of a satisfaction of any judgment obtained by the personal defendants on the accounting. The order denying defendants' motion to eliminate the item of costs from the judgment filed and entered should be reversed on the law and facts, with costs, and the motion granted.

Judgment and order affirmed, with costs, without prejudice to right to appellants to an accounting against Joseph McDonough Company.