[890 NYS2d 313]

IndyMac Bank F.S.B., Plaintiff, v Diana Yano-Horoski et al.,
Defendants.

Supreme Court, Suffolk County, November 19, 2009

**APPEARANCES OF COUNSEL**

*Steven J. Baum, P.C.*, Buffalo, for plaintiff. *Diana Yano-Horoski*, defendant pro se.

## OPINION OF THE COURT

JEFFREY ARLEN SPINNER, J.

This is an action wherein the plaintiff claims foreclosure of a mortgage dated August 4, 2004 in the original principal amount of $292,500 recorded with the Clerk of Suffolk County, New York in Liber 20826 of Mortgages at page 285. The mortgage secures an adjustable rate note of the same amount with an initial interest rate of 10.375%. The mortgage encumbers real property commonly known as 8 Oakland Street, East Patchogue, Town of Brookhaven, New York and described as district 0200, section 979.50, block 05.00, lot 001.000 on the Tax Map of Suffolk County. Plaintiff commenced this action by filing a summons, verified complaint and notice of pendency on July 27, 2005. The notice of pendency was extended by order dated September 2, 2008 and a judgment of foreclosure and sale was granted on January 12, 2009.

Thereafter and in accordance with Laws of 2008, chapter 472, § 3-a, and in view of the fact that the loan at issue was deemed to be "subprime" or "high-cost" in nature, defendant seasonably requested that the court convene a settlement conference. That request was granted and a conference was commenced on February 24, 2009, which was continued five times in a series of unsuccessful attempts by the court to obtain meaningful cooperation from plaintiff. In view of plaintiff's intransigence in its continuing failure and refusal to cooperate, both with the court and with defendant's multiple and reasonable requests, the court directed that plaintiff produce an officer of the bank at the adjourned conference scheduled for September 22, 2009.

At the conference held on September 22, 2009, Karen Dickinson, regional manager of loss mitigation for IndyMac Mortgage Services, a division of OneWest Bank F.S.B. (IndyMac) appeared on behalf of plaintiff. IndyMac purports to be the servicer of the loan for the benefit of Deutsche Bank which, it is claimed, is the owner and holder of the note and mortgage (though the record holder is IndyMac Bank F.S.B., an entity which no longer is in existence). At that conference, it was celeritously made clear to the court that plaintiff had no good faith intention whatsoever of resolving this matter in any manner other than a complete and forcible devolution of title from defendant. Although Indy-Mac had prepared a two-page document entitled *"Mediation Yano-Horoski"* which contained what purported to be a financial analysis, Ms. Dickinson's affirmative statements made it abundantly clear that no form of mediation, resolution or settle-

ment would be acceptable to plaintiff. IndyMac asserts the total amount due it to be in excess of $525,000 and freely concedes that the property securing the loan is worth no more than $275,000. Although Ms. Dickinson insisted that Ms. Yano-Horoski had been offered a "Forbearance Agreement" in the recent past upon which she quickly defaulted, it was only after substantial prodding by the court that Ms. Dickinson conceded, with great reluctance, that it had not been sent to defendant until *after* its stated first payment due date and hence, defendant could not have consummated it under any circumstances (defendant, through plaintiff's duplicity, found herself to be in the unique and uncomfortable position of being placed in default of the "agreement" even before she had received it). Plaintiff flatly rejected an offer by defendant's daughter to purchase the house for its fair market value (a so-called "short sale") with third-party financing. Plaintiff refused to consider a loan modification utilizing any more than 25% of the income of defendant's husband and daughter (both of whom reside in the premises with her), the excuse being that "[w]e can't control what non-obligors do with their money" (the logical follow up to this statement is, how does the bank control what the *obligor* does with her money?). The court found IndyMac's position to be deeply troubling, especially since a plethora of subprime loans in this county's Foreclosure Conference Part have been successfully modified with the lender's reliance upon the income of nonobligors who reside in the premises under foreclosure. The plaintiff also summarily rejected an offer by both defendant's husband and daughter to voluntarily obligate themselves for payment upon the full indebtedness, thus committing their individual incomes expressly to the purpose of a loan modification. It should be noted here that defendant did not even request any waiver or "forgiveness" of the indebtedness aside from some tinkering with the interest rate, just a modification of terms so as to enable her to repay the same. It was evident from Ms. Dickinson's opprobrious demeanor and condescending attitude that no proffer by defendant (short of consent to foreclosure and ejectment of defendant and her family) would be acceptable to plaintiff. Even a final and desperate offer of a deed in lieu of foreclosure was met with bland equivocation. In short, each and every proposal by defendant, no matter how reasonable, was soundly rebuffed by plaintiff. Viewed objectively, it is apparent that plaintiff's conduct in this matter falls within the definitions set forth in 22 NYCRR 130-1.1 (c) (2), which might well warrant the imposition of monetary sanctions.

On the court's own motion, a hearing was held on November 18, 2009 in order to explore the issues herein. At the hearing, Ms. Dickinson appeared as well as Mr. Horoski. IndyMac claimed a balance due, as of September 22, 2009, of $527,437.73, which included an escrow overdraft of $46,627.88 for taxes advanced since the date of default, but did not include attorney's fees and costs. Plaintiff was unable to tell the court the amount of the principal balance owed. Mr. Horoski advised the court that according to two letters received from plaintiff, the principal balance was said to be $285,381.70 as of February 9, 2009 and $283,992.48 as of August 10, 2009. Plaintiff stated that defendant must have made payments though it was conceded that in fact no payment had been made. Plaintiff insisted that it had remained in regular contact with defendant in an effort to reach an amicable resolution, that it had extended two modification offers to defendant which she did not accept and further, that due to her financial status she was not qualified for any modification, even under the Federal Home Affordable Modification Program guidelines. Plaintiff denied that it had "singled out" defendant, simply stating that her status was such that she fell outside applicable guidelines. All of these assertions were disputed by defendant.

That having been said, the court is greatly disturbed by plaintiff's assertions of the amount claimed to be due from defendant. The referee's report dated June 30, 2008, which has its genesis in a sworn affidavit by a representative of plaintiff (presumably one with knowledge of the account), reflects a total amount due and owing of $392,983.42. The principal balance is reported to be $290,687.85 with interest computed at the rates of 10.375% from November 1, 2005 through August 31, 2006 ($25,118.62), 12.50% from September 1, 2006 to February 28, 2007 ($18,018.66), 12.375% from March 1, 2007 to March 31, 2008 ($39,126.39) and 11.375% from April 1, 2008 to June 24, 2008 ($7,700.24) totalling $89,963.91. Plaintiff also claims $20 in nonsufficient funds charges, $295 in property inspection fees and $12,016.66 for tax and insurance advances. The judgment of foreclosure and sale dated January 12, 2009 was granted in the amount of $392,983.42 with interest at the contract rate from June 24, 2008 through January 12, 2009 and at the statutory rate thereafter plus attorney's fees of $2,300 and a bill of costs in the amount of $1,705. Even computing the accrual of prejudgment interest of $18,299.18 (using plaintiff's per diem rate in the referee's report) together with postjudgment interest

at a statutory 9% through November 19, 2009 (an additional $31,740.90), the application of simple addition yields a total amount due of $447,028.50. This figure is $80,409.23 less than the $527,437.73 asserted by plaintiff to be due and owing from defendant. The court is astounded that plaintiff now claims to be owed an escrow advance amount of $46,627.88 when, under oath, its officer swore that as of June 24, 2008 that amount was actually $34,611.22 less. Moreover, it now appears that the elusive principal balance is either $290,687.85, $285,381.70 or $283,992.48.

It is the province and indeed the obligation of the trial court to assess and to determine issues regarding credibility (*Morgan v McCaffrey*, 14 AD3d 670 [2d Dept 2005]). In the matter before the court, the pendulum of credibility swings heavily in favor of defendant. When the conduct of plaintiff in this proceeding is viewed in its entirety, it compels the court to invoke the ancient and venerable principle of *"falsus in uno, falsus in omnibus"* (Latin; "false in one, false in all") upon defendant, which, after review, is wholly appropriate in the context presented (*Deering v Metcalf*, 74 NY 501, 503 [1878]). Regrettably, the court has been unable to find even so much as a scintilla of good faith on the part of plaintiff. Plaintiff comes before this court with unclean hands yet has the insufferable temerity to demand equitable relief against defendant.

The court, over the course of some six substantive appearances in seven months, has been afforded more than ample opportunity to assess the demeanor, credibility and general state of relevant affairs of defendant and plaintiff. Although not actually relevant to the disposition of this matter, the court is constrained to note that defendant is afflicted with multiple health problems which outwardly manifest in her experiencing great difficulty in ambulation, necessitating the use of mechanical supports. Moreover, defendant's husband, Mr. Gregory Horoski, suffers from a myriad of serious medical conditions which greatly impede most aspects of his daily existence. Nonetheless, both of these persons, together with their adult daughter who resides with them and who is substantially and gainfully employed, receive income which they are more than willing to commit, in good faith, toward repayment of the debt to plaintiff and indeed, despite their physical challenges, they have appeared at each and every scheduled conference before this court. At each appearance, they have assiduously attempted to resolve this controversy in an amicable fashion, only to be cal-

lously and arbitrarily turned away by plaintiff. This has been so even in spite of the court's continuing, albeit futile, endeavors at brokering a settlement.

As a relevant aside, the scenario presented here raises the specter of a much greater social problem, that of housing those persons whose homes are foreclosed and who are thereafter dispossessed. It is certainly no secret that Suffolk County is in the yawning abyss of a deep mortgage and housing crisis with foreclosure filings at a record high rate and a corresponding paucity of emergency housing. While foreclosure and its attendant eviction are clearly the inevitable (and in some cases, proper) result in a number of these situations, the court is persuaded that this need not be the case here. In this matter, defendant is plainly willing to make arrangements for repayment and both her husband and daughter are likewise willing to allocate their respective incomes in order to reach the same end. Were plaintiff amenable, defendant would presumably continue to maintain the property's physical plant, pay taxes thereon and the property would retain or perhaps increase its market value. Plaintiff would receive a regular income stream, albeit with a reduced rate of interest and without sustaining a loss of several hundred thousand dollars. In addition, no neighborhood blight would occur from the boarding of the property after foreclosure which would, in turn, avert problems of litter, dumping, vagrancy and vandalism as well as a corresponding decline in the property values in the immediate area. In short, a loan modification would result in a proverbial "win-win" for all parties involved. To do otherwise would result in virtually certain undomiciled status for two physically unhealthy persons and their daughter, leading to an additional level of problems, both for them and for society.

Since an action claiming foreclosure of a mortgage is one sounding in equity (*Jamaica Sav. Bank v M. S. Inv. Co.*, 274 NY 215 [1937]), the very commencement of the action by plaintiff invokes the court's equity jurisdiction. While it must be noted that the formal distinctions between an action at law and a suit in equity have long since been abolished in New York (*see* CPLR 103; David Dudley Field Code of 1848 §§ 2, 3, 4, 69), the Supreme Court nevertheless has equity jurisdiction and distinct rules regarding equity are still extant (*Carroll v Bullock*, 207 NY 567 [1913]). Speaking generally and broadly, it is settled law that "[s]tability of contract obligations must not be undermined by judicial sympathy" (*Graf v Hope Bldg. Corp.*, 254 NY 1, 4

[1930]). However, it is true with equal force and effect that equity must not and cannot slavishly and blindly follow the law (*Hedges v Dixon County*, 150 US 182, 192 [1893]). Moreover, as succinctly decreed by our Court of Appeals in *Noyes v Anderson* (124 NY 175, 179 [1891]), "a party having a legal right shall not be permitted to avail himself of it for the purposes of injustice or oppression."

In *Eastman Kodak Co. v Schwartz* (133 NYS2d 908 [Sup Ct, NY County 1954]), Special Term stated that "[t]he maxim of 'clean hands' fundamentally was conceived in equity jurisprudence to refuse to lend its aid in any manner to one seeking its active interposition who has been guilty of unlawful, unconscionable or inequitable conduct in the matter with relation to which he seeks relief." (*Id.* at 925, citing *First Trust & Sav. Bank v Iowa-Wisconsin Bridge Co.*, 98 F2d 416 [8th Cir 1938], *cert denied sub nom. Phoenix Fin. Corp. v Iowa-Wisconsin Bridge Co.*, 305 US 650 [1938], *reh denied* 305 US 676 [1939]; *General Excavator Co. v Keystone Driller Co.*, 64 F2d 39 [6th Cir 1933], *cert granted* 289 US 721 [1933], *affd* 290 US 240 [1933].)

In attempting to arrive at a determination as to whether or not equity should properly intervene in this matter so as to permit foreclosure of the mortgage, the court is required to look at the situation in toto, giving due and careful consideration as to whether the remedy sought by plaintiff would be repugnant to the public interest when seen from the point of view of public morality (*see for example* 55 NY Jur 2d, Equity § 113; *Molinas v Podoloff*, 133 NYS2d 743 [Sup Ct, NY County 1954]). Equitable relief will not lie in favor of one who acts in a manner which is shocking to the conscience (*Duggan v Platz*, 238 App Div 197 [3d Dept 1933], *mod on other grounds* 263 NY 505 [1934]); neither will equity be available to one who acts in a manner that is oppressive or unjust or whose conduct is sufficiently egregious so as to prohibit the party from asserting its legal rights against a defaulting adversary (*In re Foreclosure of Tax Liens*, 117 NYS2d 725 [Sup Ct, Kings County 1952], *affd on other grounds sub nom. City of New York v Stolpensky*, 286 App Div 1027 [2d Dept 1955], *mod on other grounds on rearg* 1 AD2d 95 [2d Dept 1955], *appeal granted* 1 AD2d 784 [2d Dept 1956]). The compass by which the questioned conduct must be measured is a moral one and the acts complained of (those that are sufficient so as to prevent equity's intervention) need not be criminal or actionable at law but must merely be willful and unconscionable

or be of such a nature that honest and fair-minded folk would roundly denounce such actions as being morally and ethically wrong (*Pecorella v Greater Buffalo Press*, 107 AD2d 1064 [4th Dept 1985]). Thus, where a party acts in a manner that is offensive to good conscience and justice, he will be completely without recourse in a court of equity, regardless of what his legal rights may be (*Eastman Kodak Co. v Schwartz*, 133 NYS2d 908 [1954]; *York v Searles*, 97 App Div 331 [2d Dept 1904], *affd* 189 NY 573 [1907]).

An objective and painstaking examination of the totality of the facts and circumstances herein leads this court to the inescapable conclusion that the affirmative conduct exhibited by plaintiff at least since February 24, 2009 (and perhaps earlier) has been and is inequitable, unconscionable, vexatious and opprobrious. The court is constrained, solely as a result of plaintiff's affirmative acts, to conclude that plaintiff's conduct is wholly unsupportable at law or in equity, greatly egregious and so completely devoid of good faith that equity cannot be permitted to intervene on its behalf. Indeed, plaintiff's actions toward defendant in this matter have been harsh, repugnant, shocking and repulsive to the extent that it must be appropriately sanctioned so as to deter it from imposing further mortifying abuse against defendant. The court cannot be assured that plaintiff will not repeat this course of conduct if this action is merely dismissed and hence, dismissal standing alone is not a reasonable option. Likewise, the imposition of monetary sanctions under 22 NYCRR 130-1.1 *et seq.* is not likely to have a salubrious or remedial effect on these proceedings and certainly would not inure to defendant's benefit. This court is of the opinion that cancellation of the indebtedness and discharge of the mortgage, when taken together, constitute the appropriate equitable disposition under the unique facts and circumstances presented herein.

After careful consideration, it is the determination of this court that the indebtedness evidenced by the adjustable rate note dated August 4, 2004 in the original principal amount of $292,500 made by Diana J. Yano-Horoski in favor of IndyMac Bank F.S.B. should be cancelled, voided and set aside. In addition, the mortgage which secures the adjustable rate note, given to Mortgage Electronic Registration Systems Inc., as nominee for IndyMac Bank F.S.B., dated August 4, 2004 and recorded with the Clerk of Suffolk County on August 16, 2004 in Liber 20826 of Mortgages at page 285, as assigned by assignment re-

corded with the Clerk of Suffolk County in Liber 21273 of Mortgages at page 808 should be cancelled and discharged of record. Further, plaintiff, its successors and assigns should be forever barred and prohibited from any action to collect upon the adjustable rate note. In addition, the judgment of foreclosure and sale granted on January 12, 2009 and entered on January 23, 2009 should be vacated and set aside and the notice of pendency should be cancelled and discharged of record. For this court to decree anything less than the foregoing would be for the court to be wholly derelict in the performance of its obligations.

Upon the court's own motion, it is ordered that the adjustable rate note in the amount of $292,500 dated August 4, 2004 made by Diana J. Yano-Horoski in favor of IndyMac Bank F.S.B. shall be and the same is hereby cancelled, voided, avoided, nullified, set aside and is of no further force and effect; and it is further ordered that the mortgage in the amount of $292,500 which secures said adjustable rate note given by Diana J. Yano-Horoski to Mortgage Electronic Registration Systems Inc., as nominee for IndyMac Bank F.S.B., dated August 4, 2004 and recorded with the Clerk of Suffolk County on August 16, 2004 in Liber 20826 of Mortgages at page 285, as assigned to IndyMac Bank F.S.B. by assignment recorded with the Clerk of Suffolk County in Liber 21273 of Mortgages at page 808 shall be and the same is hereby vacated, cancelled, released and discharged of record; and it is further ordered that the plaintiff, its successors and assigns are hereby barred, prohibited and foreclosed from attempting, in any manner, directly or indirectly, to enforce any provision of the aforesaid adjustable rate note and mortgage or any portion thereof as against defendant, her heirs or successors; and it is further ordered that the judgment of foreclosure and sale granted under this index number on January 12, 2009 and entered in the Office of the Clerk of Suffolk County on January 23, 2009 shall be and the same is hereby vacated and set aside; and it is further ordered that the notice of pendency filed with the Clerk of Suffolk County on July 27, 2005 under sequence No. 172456, which was extended by order dated September 2, 2008 shall be and the same is hereby cancelled, vacated and set aside; and it is further ordered that the notice of pendency filed with the Clerk of Suffolk County on August 29, 2008 under sequence No. 199616, shall be and the same is hereby cancelled, vacated and set aside; and it is further ordered that the Clerk of Suffolk County shall cause a copy of this order and judgment to be filed in the land records so as to effectuate of record each

and every one of the provisions hereinabove set forth with respect to cancellation of the instruments and items of record; and it is further ordered that plaintiff shall pay to the Clerk of Suffolk County, within 10 days from the date of entry hereof, any and all fees and costs required to effect cancellation of record of the mortgage, notices of pendency and any other fees so levied.