OPINION OF THE COURT
Herbert Kramer, J.
Is it equitable to permit the defendant in a foreclosure action to file an answer two years post-commencement? In this action, where the defendant alleges valid affirmative defenses and the parties have engaged in both private and court supervised negotiations, this court holds that equity permits the filing of a late answer.
This application triggers the necessity to review the procedure in mortgage foreclosure actions and the effect that settlement conferences, both statutorily mandated and informal, have had on the standard progress of litigation.
This action was filed on October 8, 2009. On October 23, 2009, the summons and complaint was served pursuant to CPLR 308 (2), by leaving a copy with defendant’s mother at the purported place of residence, and by mail on October 27, 2009. A request for judicial intervention and motion for an order of reference were filed on January 26, 2010.
Thereafter, approximately 10 months later, on November 23, 2010, by “notice of withdrawal,” the plaintiff sought to withdraw the order of reference. The application was granted by order of this court on January 5, 2011. That order provided that, in the event that the plaintiff failed to further prosecute the action within 60 days of entry, the action would be dismissed, without prejudice. Thereafter, the court records reflect that the plaintiff requested a settlement conference, presumably in an attempt to prosecute the action within the allotted 60 days.
On May 2, 2011, the initial settlement conference was held. Two more settlement conferences were held, one on May 24, 2011 and the last one on September 9, 2011, at which point it was referred to the IAS Part in order for the defendant to make *852 the instant application.[1] In support of the application, the defendant asserts that settlement negotiations had been ongoing during the pendency of the action. Defendant further contends that she was “under the impression” that during negotiations the action would be stayed. Furthermore, the proposed answer sets forth potentially valid defenses, including standing of the plaintiff.
Settlement Conferences
CPLR 3408 created mandatory settlement conferences in residential foreclosure actions. The statute explicitly requires the parties to “negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible.” (CPLR 3408 [f] [emphasis added].) Furthermore, the Uniform Civil Rules for the Supreme Court and the County Court provide that settlement conferences shall include
“settlement discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents, including determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to. The court may also use the conference for whatever other purposes the court deems appropriate.” (22 NYCRR 202.12-a [c] [2].)
The federal government, the New York State Legislature, and the Office of Court Administration have made extraordinary efforts to assist homeowners, stem the tide of foreclosures, and the attendant economic ramifications thereof. Those efforts are clearly evidenced in the plethora of recent legislative action. (See generally CPLR 3408; RPAPL 1320; Administrative Order of the Chief Administrative Judge of the Courts, No. AO/431/11 [Mar. 2, 2011] [which requires plaintiffs attorney to file an affidavit detailing the reasonable steps taken to verify the accuracy of the documents submitted to the court].)[2] The goal of the federal programs is to “stem the spread of foreclosures and fall *853 ing home values for all Americans, and do everything we can to help responsible homeowners stay in their homes.”* *[3] 4Similarly, the stated purpose of the Foreclosure Settlement Part in Kings County is “to preserve community housing, preserve banking funds, and to help a homeowner avoid the loss of his or her home”[4] (Emphasis added.)
In addition to HAMP[5] a more recent program was promulgated, HAFA (Home Affordable Foreclosure Alternatives), which is geared to promote alternatives to foreclosure, including deeds in lieu and short sales.[6] Clearly, the detrimental effects of foreclosed upon properties upon the community have been recognized by the state and federal legislators.
Of note, prior to, and during the settlement conference sessions, the possibility of a short sale was discussed; however, one did not come to fruition. Apparently, the lender issued and subsequently revoked its approval for a short sale.[7]
*854 Permission to File a Late Answer
Defendant brought the instant motion for permission to file a late answer approximately two years after service of the summons pursuant to CPLR 3012 (d). The statute provides, “[u]pon the application of a party, the court may extend the time to appear or plead, or compel the acceptance of a pleading untimely served, upon such terms as may be just and upon a showing of reasonable excuse for delay or default.” “To compel the plaintiff to accept an untimely answer as timely, a defendant must provide a reasonable excuse for the delay and demonstrate a potentially meritorious defense to the action.” (Ryan v Breezy Point Coop., Inc., 76 AD3d 523, 524 [2010].) The determination of what constitutes a reasonable excuse lies within the sound discretion of the Supreme Court. (Maspeth Fed. Sav. & Loan Assn. v McGown, 77 AD3d 889 [2d Dept 2010].) Plaintiff opposes the motion on several grounds, including lack of a reasonable excuse for the delay, lack of meritorious defense and prejudice to the plaintiff.
In support of this motion, the defendant claims that the time delay in seeking to file a late answer is due to ongoing settlement negotiations, both in the court and privately. Defendant further alleges that she was under the impression that the action was stayed during the discussions with the plaintiff. Defendant’s partially erroneous understanding is actually quite common. Clearly RPAPL 1303 and 1320, which require specially colored paper and warnings of the severe consequences of the foreclosure action, are meant to aid the defaulting homeowner to recognize the severity of the action. It is not unique that defendants in foreclosure matters, untutored in legal matters, will attempt negotiations directly with the lender or servicer and obtain assurances that while negotiating the action will remain stagnant.[8] To compound this problem, there is another disconnect between the lending institution, its servicer, and litigation counsel, which creates a scenario where the borrower is often *855 times the recipient of conflicting messages regarding the status of the litigation.[9] This court finds that the defendant, who was pro se until late into the litigation, has established a reasonable excuse for the delay.
*854 “My loan is scheduled for foreclosure soon. What should I do?
“Contact your mortgage servicer or credit counselor. Many mortgage lenders have expressed their intention to postpone foreclosure sales on all mortgages that may qualify for the modification in order to allow sufficient time to evaluate the borrower’s eligibility.” (Phillips, The White House Blog, Help for homeowners, www.whitehouse.gov/blog/09/02/18/Help-forhomeowners.)
*855 There have been cases in which the defendant was not granted leave to file a late answer. In a matter in Suffolk County, claims of a mortgagor that he or she has contacted the lender or its servicing agent in an attempt to modify or settle the mortgage were “insufficient to establish a good faith belief in settlement and the concomitant reasonable excuse for the mortgagor’s failure to answer the summons and complaint.” (Onewest Bank FSB v Berry, 25 Misc 3d 1218[A], 2009 NY Slip Op 52171[U], *3 [2009].) In support of the opinion, the court noted that the legislatively mandated settlement conferences necessarily postdate the time in which a defendant has to answer. Therefore, the “mere engagement in discussions aimed at a potential modification of the subject mortgage loan may not serve as a means to open up an otherwise inexcusable default in answering the summons and complaint.” (Id.)
The court further opined that it is only in those cases where the
“defendant advances specific and substantiated allegations that the plaintiff or its agents engaged in acts constituting extrinsic fraud, that is, wrongful acts of trickery or deceit which allegedly induced the moving defendant into defaulting or otherwise wrongfully deterred him or her from litigating the plaintiff’s claims, will a vacatur of a default in answering be excused as reasonable.” (Id.)
In Onewest Bank, and its progeny, the defendants had failed to establish the requisite fraud or wrongful acts of trickery and therefore leave to file a late answer was denied. (See also Bank of N.Y. v Jayaswal, 33 Misc 3d 1214[A], 2011 NY Slip Op 51922[U], *5 [2011].)[10]
For policy reasons this court respectfully disagrees. First, it is axiomatic that a foreclosure action is an action in equity. While *856 the formal distinctions between equity and law have been abolished, the unique set of rules attendant to equity are still extant. (See CPLR 103; IndyMac Bank F.S.B. v Yano-Horoski, 26 Misc 3d 717 [2009] .) Therefore, a strict application of the law necessarily fails to distinguish between law and equity and is counterproductive to the stated goals of CPLR 3408, RPAPL 1320, and the federal guidelines found in HAMP* [11] This court holds that the enactment of section 1320 is evidence of the Legislature’s desire to aid homeowners, not to provide a means to deny a defendant the opportunity to litigate.
Furthermore, the law itself supports permitting a late answer in cases where the parties engaged in settlement negotiations. A good faith belief in settlement, supported by substantial evidence, constitutes a reasonable excuse for default. (Armstrong Trading, Ltd. v MBM Enters., 29 AD3d 835 [2006].) In foreclosure cases, where much of the negotiation is done by pro se litigants and telephonically, the standard for “substantial evidence” must be more flexible than in other actions at law. Any other outcome would not be equitable. A pro se litigant attempting to negotiate with the plaintiff in good faith should not be divested of his or her right to litigate the action as a result of those negotiations.
Certainly, the time frame of negotiations in the Settlement Conference Part of the court should not be calculated into the consideration when faced with a motion for leave to file a late answer.[12] A pro se defendant in an action in equity should not be lulled into a false sense of security by the plaintiff or the courts. To penalize a defendant who is participating in settlement negotiations in the court, by holding that time period against him or her, is to penalize a litigant who follows the rules of this court. That is certainly not in line with the intention of the Legislature.
As to plaintiffs assertion that defendant lacks a meritorious defense, the answer alleges a possible defect in assignment. It should be noted that the original holder of the note was Lend America. The note was endorsed in blank by Gwen Lucas, assis *857 tant vice-president of Lend America. The mortgagee of record, however, was Mortgage Electronic Registration Systems (MERS). The assignment of the mortgage was recorded on October 13, 2009. However, assignment of the note was not recorded, and remains unrecorded, to date. Plaintiff insists, however, that a written assignment is not required to acquire the rights under the note, but rather physical delivery suffices and therefore no real defense exists.
Plaintiff is partially correct as UCC 3-202 (1) provides that “[i]f the instrument is payable to order it is negotiated by delivery with any necessary indorsement.” However, the issue in this matter is that there has been no evidence presented by a person with knowledge that a physical delivery of the note actually occurred. (See IndyMac Bank F.S.B. v Garcia, 28 Misc 3d 1202[A], 2010 NY Slip Op 51127[U] [2010].) Therefore, plaintiff has not established that the defenses proposed in the answer lack merit.
Lastly, plaintiff claims prejudice due to delay in the form of increased fees, taxes, escrow and expenses. It is clear from the history of this action that the plaintiff did not vigilantly prosecute this action. Approximately 10 months after plaintiff filed its motion for an order of reference it was withdrawn without explanation. Thereafter it was plaintiff who requested to enter the Settlement Conference Part. Clearly, it would be inequitable to allow the plaintiff to simultaneously delay the action and to rely upon it as evidence of prejudice. Regardless of plaintiffs request for the settlement conference, leave should liberally be granted in equity.
Conclusion
As a foreclosure is an action in equity, in cases where the time period post-default is significant, but viable defenses are alleged, and there is evidence of private or mandated settlement negotiations, a defendant should be granted leave to file a late answer. Therefore, the defendant’s motion is granted. Defendant is directed to serve the plaintiff with the answer within 15 days of entry of this order and plaintiff is directed to accept same.

. Both a statute and the rules of this court require the action be stayed pending these settlement conferences (CPLR 3408; Uniform Rules for Trial Cts [22 NYCRR] § 202.12-a [http://www.nycourts.gov/rules/trialcourts/ 202.shtml#12a]).

. Well before the foreclosure crisis, this court was part of a committee which investigated the litigation process. Through reviewing the complex *853 issues specifically attendant to foreclosure actions, recommendations were made to the Legislature regarding notice and service, as reflected in the bill jacket of RPAPL 1320. The legislative history states that the section is meant “to provide additional notice to mortgagors that a foreclosure action has been commenced. This recommendation has been made by members of the Judiciary who believe that unsophisticated homeowners currently do not receive sufficient notice that they are about to lose their homes through foreclosure.” (Senate Introducer’s Mem in Support, Bill Jacket, L 2007, ch 458, at 6.)

. As stated by President Obama upon signing the American Recovery and Reinvestment Act into law on February 17, 2009 (Macon Phillips, The White House Blog, Help for homeowners, www.whitehouse.gov/blog/09/02/18/Helpfor-homeowners [Feb. 18, 2009] [accessed Dec. 5, 2011]).

. Uniform Civil Term Rules of the Supreme Court, Kings County, part G (http://www.nycourts.gov/courts/2jd/kings/civil/KingsCivilSupreme Rules. shtml#for eclosuresettlement).

. The Home Affordable Modification Program, the federal program designed to assist homeowners obtain modifications. (See generally http:// makinghomeaffordable.gov.)

. http://www.makinghomeaffordable.gov/programs/exit-gracefully/Pages/ hafa.aspx (accessed Dec. 8, 2011).

. The rejection of a proposed short sale by the lender or its agent raises the question of whether “good faith” as required by CPLR 3408 is present. In this matter it appears as though a quitclaim deed was not offered to the lender to end the litigation and to prevent a deficiency judgment. However, in considering foreclosure alternatives, this court finds that should such an offer be rejected by the plaintiff, that denial would constitute bad faith. In contradiction to the stated goals of HAFA and the legislators there have been increasing reports that it is more profitable for litigants to continue with foreclosure rather than take back a quitclaim deed. (See e.g. New York Times, Times Topics, Obama Housing Plan, http://topics.nytimes.com/top/reference/timestopics/ subjects/c/credit_crisis/housing_plan/index.html [last updated Nov. 30, 2011].)

. The practice is so common that a frequently asked questions section on the White House’s Web site contains the following:

. There have been circumstances upon inquiry of the court, in the process of assigning an auction date, where it has been discovered through the County Clerk’s records that the property has been sold and the subject mortgage satisfied. This is the same disconnect between the lenders/servicers and their counsel which has made unprecedented difficulties in settlement negotiations.

. The court refused to allow the filing of a late answer when the defendant alleged that an “operations consultant” of the plaintiff gave him legal advice and “duped him” into not timely answering. The court cited to the *856 recent notice requirements of RPAPL 1320 as further reason that defendants’ excuses for default were insufficient.

. Perhaps the procedural distinction of the instant action and Onewest is also a contributing factor in the differing opinions. In Onewest, a judgment of foreclosure and sale had already been granted. (25 Misc 3d 1218[A], 2009 NY Slip Op 52171[U] [2009].) In this action no judgment would require vacatur.

. As all motions are stayed during that time, which effectively stays the entire action.