*313 OPINION OF THE COURT
Herbert Kramer, J.
There is only one standard for good faith under CPLR 3408. That standard exists regardless of insurance regulations by the Federal Housing Administration (FHA), or others, and independent of investor restrictions.
This court holds that the best uniform standard for “good faith” is compliance with the Federal Home Affordable Modification Program (HAMP) regulations.
In March of 2009, in response to the nationwide foreclosure crisis, the Treasury Department introduced the HAMP HAMP is a government-subsidized mortgage modification program, which was designed to make qualified mortgage loans affordable to borrowers who are in default or who are in imminent danger of default. All banks that received financial assistance from the federal government under the Troubled Asset Relief Program were required to sign a participation agreement with the United States Treasury Department, agreeing to participate in the HAMP and comply with HAMP guidelines. In order to be eligible for a HAMP modification the loan must have been originated prior to January 1, 2009, and the property must be a one-to-four-family unit, owner occupied with certain unpaid principal caps, among other criteria. (See JP Morgan Chase Bank, N.A. v Ilardo, 36 Misc 3d 359 [2012].)[1]
In order to apply for a HAMP modification the borrower must submit various documents for the servicer or lender to review. Included in those documents are financial information, hardship letters, tax forms and a Dodd-Frank certification. Once the package is complete the servicer or lender then reviews the borrower for a modification according to the guidelines set by HAMP to determine whether the mortgage payments can be lowered to 31% of the borrowers income. The mechanisms set forth in the HAMP guideline include a “waterfall” which manipulates the terms of the mortgage to obtain a modification.[2]
*314 The New York Legislature enacted CPLR 3408 in 2008, which applies to certain residential foreclosure actions in the State of New York, with the express legislative intent to “help the defendant avoid losing his or her home” (CPLR 3408 [a] [emphasis added].)
CPLR 3408 (a) requires, among other things, that mandatory settlement conferences be held for the purposes of:
“discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents, including, but not limited to determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to, and for whatever purposes the court deems appropriate.”
CPLR 3408 (f) further requires that “[b]oth the plaintiff and defendant shall negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible” (emphasis added). It is this term, “good faith,” which has become a matter of great contention.
The instant action was commenced by summons and verified complaint in April of 2011. The verified complaint alleges that on January 22, 2009, the defendants Sevan Walker and Pamella M. Walker executed and delivered to Mortgage Electronic Registrations Systems, Inc. (MERS) acting solely as nominee for ICC mortgage Services, its successors and assigns a mortgage in the principal amount of $548,576. Thereafter the mortgage was assigned from MERS, acting solely as nominee for ICC Mortgage Services, to Flagstar Bank, FSB, by an assignment of mortgage *315 dated January 24, 2011 “and is currently in the process of being recorded in the Kings County City Register’s Office.”
The complaint further alleges that the defendants defaulted on their obligations under the terms of the note and mortgage on June 1, 2010. The plaintiff
“is now and was at the commencement of the within action the sole, true and lawful owner of the said Note and Mortgage securing the same or has been delegated the authority to institute a mortgage foreclosure action against the same or has been delegated the authority to institute a mortgage foreclosure action against the homeowner by the owner and holder of the subject Mortgage and Note.”
Allegedly, the note was assigned by endorsement to Flagstar Bank by Dean Sourial, as President of ICC Mortgage. The purported assignment is endorsed on the face of the note and undated. Furthermore, Flagstar asserts that the original note was endorsed and delivered to it prior to the commencement of this action and that the original note remains in its “vault.”[3] Pursuant to CPLR 3408 a settlement conference was initially held on October 25, 2011. Thereafter the parties appeared in the settlement part on January 3, 2012 and February 29, 2012. At the last conference the matter was referred to the Judicial Foreclosure Referral Part for a hearing on whether the parties acted in “bad faith” during the settlement negotiations. On May 15, 2012 a hearing was held on the record.
The defendants’ witnesses included the attorney for the defendant and the defendant Mrs. Pamella Walker. This court finds the testimony of Ms. Pullini, the defendants’ attorney, to be credible. Ms. Pullini testified that a modification would be possible for the defendants if the HAMP mechanisms were utilized.[4]
FHA is neither the owner nor investor of the loan but rather an insurer of the note. As insurer, FHA requires the loans and borrowers to meet certain criteria for origination. “Congress created the Federal Housing Administration’s (‘FHA’) Single Family Insured Loan program to ‘meet the housing needs’ of *316 low-to-moderate income borrowers. 12 U.S.C. § 1708(a)(7)” (Sinclair v Donovan, 2011 WL 5326093, *3, 2011 US Dist LEXIS 128220, *11 [SD Ohio 2011]). In the event of a default the lender may file a claim with the Secretary of Housing and Urban Development. (12 USC § 1709 [a].) If a default has occurred a mortgagee
“ ‘shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure ....’Id. § 1715u(a). A mortgagee ‘must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department [of housing and Urban Development].’ 24 C.ER. § 203.501.” (Sinclair v Donovan, 2011 WL 5326093, *3, 2011 US Dist LEXIS 128220, *11-12 [emphasis omitted].)[5]
The loss mitigation options have been interpreted to benefit the government as provider of the insurance. (See id.; see also 24 CFR 203.501 [“Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department”].)
Furthermore, plaintiff during the hearing testified that FHA restricts its ability to modify loans. FHA, in opposition to HAMR prohibits extending the term of the loan, lowering the interest rate lower than the average rate, loan forgiveness and balloon payments. Therefore, plaintiff alleges that its hands are tied.
In this action the note is not technically eligible for HAMR as it originated after January 1, 2009. Regardless, whether or not the loan qualifies for HAMR the most appropriate benchmarks for good faith are the HAMP guidelines.
Good Faith
This action gives rise to a pertinent inquiry, what is the standard of good faith required by CPLR 3408? It is apparent to this court that good faith is not just the absence of “bad faith,” but *317 requires actively working towards a standard of good faith, which is applicable to all foreclosure actions. (See e.g. Southern Indus. v Jeremias, 66 AD2d 178 [1978] [discussing a lack of good faith but not “bad faith”].) It is antithetical to a court of equity to have various standards of good faith for defendants in the same circumstances. Equity is equality and equity provides the same measure of justice to each party. (55 NY Jur 2d, Equity § 87, citing Matter of Miglietta [2660 Broadway Corp.], 287 NY 246 [1942]; Loma Holding Corp. v Cripple Bush Realty Corp., 147 Misc 655 [1933].)[6] Further, this court has previously held that the good faith requirement has been present even prior to the enactment of CPLR 3408. (See HSBC Bank USA, N.A. v Sene, 34 Misc 3d 1232[A], 2012 NY Slip Op 50352[U] [2012].)
Plaintiff asserts that FHA, as a federal agency, restricts and binds its ability to contemplate a HAMP modification. Essentially, this is an issue of preemption.
Obviously state law imposes duties ánd obligations on mortgage servicers irrespective of FHA and HAMP (See Olivares v PNC Bank, 2011 WL 4860167, 2011 US Dist LEXIS 118338 [D Minn 2011].) Furthermore, displacement of state law will occur only where significant conflict exists between state and federal laws. (Id., citing Boyle v United Technologies Corp., 487 US 500 [1988].) Conflict preemption occurs when it is physically impossible to comply with both federal and state regulations or state law stands as an obstacle to accomplishing goals of federal law (id., citing Wisconsin Public Intervenor v Mortier, 501 US 597, 605 [1991]). The “law of property is one of those ‘areas of law traditionally reserved to the states,’ where a strong presumption against pre-emption applies,” but even that presumption cannot overcome a direct conflict with federal law. (School Bd. of Avoyelles Parish v United States Dept. of Interior, 647 F3d 570, 582 [5th Cir 2011].)
It is this court’s opinion that utilizing the HAMP mechanisms as the marker for good faith in negotiations will enable the *318 plaintiffs to abide by both state and federal regulations. The HAMP guidelines are the most clearly designed to abide by New York State’s public policy to avoid defendants losing their homes. In the instant action, FHA will likewise be protected by utilizing HAMP guidelines because the property is significantly underwater.[7]
In the interests of equity, this matter is stayed pending the plaintiff reevaluating the defendants under the rubric of HAME Once an evaluation has been made the parties are directed to contact the Judicial Foreclosure Referral Part to schedule a conference.

. There is a HAMP-FHA program which pertains to specifically FHA insured loans.

. The first step of the “waterfall” is to capitalize accrued interest and arrears (all late fees may not be capitalized and must be waived if the borrower satisfies all conditions of a trial plan). Second, the interest rate is lowered to the current interest rate; if the loan is an adjustable rate loan then the start *314 ing interest rate is the “reset interest rate.” The interest rate is then lowered in increments of .125% until the 2% floor. If necessary, the term of the loan is extended by up to 480 months from the modification effective date; “[i]f a term extension is not permitted under the applicable PSA or other investor servicing agreement, reamortize the mortgage loan based upon an amortization schedule of up to 480 months with a balloon payment due at maturity” (US Dept of Treasury, Supplemental Directive 09-01, at 9). If necessary the servicer must provide for principal forbearance to achieve the target monthly mortgage payment ratio. If the monthly mortgage payment is lowered to 31% of the monthly income then the “net present value” test is run to determine whether it is advantageous for the lender to offer the modification or to proceed in the alternative.

. However, in spite of being ordered to produce the original note, Flagstar has yet to comply with that order and rather provides the court with a photocopy of the purported note.

. During the hearing the plaintiff testified that FHA was an investor in the loan, that the note was endorsed in blank, and later that FHA actually owned the note.

. “Specific options [regarding appropriate actions] are itemized, among them, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales, under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under § 203.417 and § 203.614, and recasting of mortgages under § 203.616.” (Sinclair v Donovan, 2011 WL 5326093, *3, 2011 US Dist LEXIS 128220, *12.)

. Conduct such as providing conflicting information, refusal to honor agreements, unexcused delay, unexplained charges, and misrepresentations have been held to constitute “bad faith.” (See Wells Fargo Bank, N.A. v Meyers, 30 Misc 3d 697 [2010]; Emigrant Mtge. Co. Inc. v Corcione, 28 Misc 3d 161 [2010]; Wells Fargo Bank, N.A. v Hughes, 27 Misc 3d 628 [2010].) Refusal to accept deed in lieu of foreclosure would he considered bad faith. (HSBC Bank USA, N.A. v Cayo, 34 Misc 3d 856 [2011].) Dilatory practices are evidence of bad faith and the parties’ obligation is to not only come to the court in good faith but to continue negotiations in good faith. (Deutsche Bank Trust Co. of Am. v Davis, 32 Misc 3d 1210[A], 2011 NY Slip Op 51238[U] [2011].)

. The amount due on the loan is approximately $600,000 on a property that is valued around $400,000.