*657 OPINION OF THE COURT
Robert E. Torres, J.
In this foreclosure action, the defendant Jorge Luis Rodriguez seeks an order, pursuant to CPLR 3408 and Uniform Rules for Trial Courts (22 NYCRR) § 202.12, finding that the plaintiff U.S. Bank, N.A. (US Bank), and its loan servicer, Wells Fargo Bank (Wells Fargo), violated their duty to negotiate in good faith during mandatory settlement conferences. Rodriguez maintains that the plaintiff has not provided a timely decision on his loan modification application that comports with the applicable federal Home Affordable Modification Program (HAMP) guidelines.
Specifically, Rodriguez claims that Wells Fargo mishandled and misapplied the HAMP guidelines as to his eligibility for HAMP Therefore, Wells Fargo materially violated the HAMP guidelines, and demonstrated a lack of good faith. Consequently, Rodriguez is seeking an order that: (1) directs US Bank to process and decide his loan modification under the HAMP guidelines; (2) tolls the accrual of interest, late fees and US Bank’s counsel fees until such time as the court determines that the plaintiff is in compliance with CPLR 3408; and (3) tolls the accrual of interest, late fees and US Bank’s counsel fees retroactively from June 22, 2012. Plaintiff opposes the motion, and insists it has fairly complied with the HAMP guidelines.
For the reasons that follow, the defendant’s motion is granted.
Background
A. HAMP
The United States Department of Treasury (DOT) established HAMP pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (12 USC §§ 5201-5261). HAMP is designed to prevent avoidable home foreclosures by incentivizing loan servicers to reduce the required monthly mortgage payments for certain struggling homeowners. Under the program, servicers are obliged to abide by guidelines promulgated by DOT when determining a mortgagor’s eligibility for a permanent loan modification (see DOT, Making Home Affordable Program, Handbook for Servicers of Non-GSE Mortgages at 27 [Version 3.4, Dec. 15, 2011]). A servicer participation agreement (SPA) committed Wells Fargo to perform certain loan modifications and foreclosure prevention services for eligible loans. The SPA incorporated a “Program Documentation,” which set forth guidelines, procedures, instructions, documenta *658 tian, and directives issued by DOT, Fannie Mae, or Freddie Mac in connection with the duties of participating servicers.
Originally, the HAMP tier 1 program was set up to assist borrowers who are delinquent on their mortgages for their primary residence or facing imminent risk of default. Borrowers in risk of defaulting on their mortgages can then apply to the program, and the mortgage servicer provides the modification or prevention services to the borrower. As a condition of participating in the program, servicers must comply with guidelines and procedures issued by DOT (see Making Home Affordable, FLAME] Commitment to Purchase Financial Instrument and Servicer Participation Agreement, available at https ://www.hmpadmin. com/portal/programs/docs/hamp_servicer/servicerparticipation agreement.pdf; see also Making Home Affordable, Home Affordable Modification Program: Overview, https ://www.hmpadmin. com/portal/programs/hamp.jsp [accessed July 30, 2013]).
HAMP tier 1 has the following guidelines of eligibility: the mortgage loan must have originated prior to December 31, 2008; the mortgage must be a first lien; financial hardship must be demonstrated by the homeowner; the property must be one to four units; there cannot be any previous loan modification under HAMP; the property must be the principal residence; and the monthly payment must be greater than 31% of the borrower’s monthly gross income. Once a borrower meets this criteria, a servicer will review the financial information provided by the borrower to determine if he is eligible for the tier 1 program (see HAMP4Homeowners, HAMP Tier 1 Guidelines, http://hamp 4owners.org/hamp-program/guidelines/hamp-tier-l/ [accessed July 31, 2012]).
Thereafter, the servicer is to add to the loan balance or principal, the accrued interest, homeowner’s insurance, property taxes and other out-of-pocket escrow advances as well as other servicing advances such as legal fees paid to third parties (also known as PETE, or principal, interest, taxes and insurance). After the servicer has the new balance figured, the interest rate on the loan is reduced to hit the 31% ratio for the target monthly mortgage payment (id.). This rate can be as low as 2%. If lowering the interest rate to 2% does not get the monthly payment amount low enough, the servicer can review whether the loan should be extended to 480 months (see Making Home Affordable, FLAME] Supplemental Directive 09-01 at 9 [Apr. 6, 2009]). If lowering the interest rate and extending the loan term still doesn’t meet the target monthly payment of 31% the *659 servicer is to then subtract a calculated, amount from the unpaid principal balance. This “principal forebearance” is non-interest bearing, and non-amortizing. It will, as well, create a balloon payment that will be due at the earliest possible time that the borrower transfers the property, pays off the loan through refinancing, or when the loan matures.
The first program was expanded on June 1, 2012 to assist more distressed homeowners qualify for loan modifications, and it is known as the tier 2 program (see Making Home Affordable, www.makinghomeaffordable.gov/programs/lower-payments/ Pages/hamp.aspx [accessed July 31, 2013]). The tier 2 program now permits owners of rental or commercial properties to modify mortgages and reduce monthly payments. As set forth in tier 1, HAMP tier 2 does not apply to mortgage loans through Fannie Mae or guaranteed by the Veterans Administration or another federal agency. Tier 2 allows modification of up to three mortgages. The program applies to loans originated before January 1, 2009. Servicers are also required to offer forbearance assistance to unemployed homeowners for 12 months. Borrowers who weren’t successful with a HAMP 1 trial payment plan are eligible to apply for HAMP 2 modification, as long as 12 months have passed. In addition, the tier 2 program revised the debt-to-income ratio for qualification, and sets the pre-modification monthly mortgage payment below 31% of debt-to-income ratio. Borrowers are not eligible under tier 2 if their debt-to-income ratio is less than 25% or greater than 42%. Tier 2 eligibility also requires a 10% or greater reduction in monthly principal and interest payments after modification. If the reduction is less, the mortgage is not eligible for modification under HAMP The net present value (NPV) was also revised to qualify more homeowners. The tier 2 program contemplates instances where a borrower may be ineligible for the tier 1 program. Therefore, if a borrower’s pre-modification monthly payment was below 31% or a positive NPV could not be achieved without excessive forebearance, or if a negative NPV came up, the tier 2 program could potentially help an unqualified tier 1 applicant.
Starting in February 2013, the range of allowable monthly payments expanded. As explained in Supplemental Directive 12-09, the new monthly payment must be between 10% and 55% of a borrower’s gross income or a range specified by the loan servicer, provided that the allowable percentage range fits between the old/new percentage (Making Home Affordable, HAMP, Supplemental Directive 12-09 at 3 [Nov. 30, 2012]). This new *660 rule affects the check of HAMP tier 2 eligibility after the proposed new payment is calculated, but it does not otherwise change the procedure for calculating the new payment. All home loans that meet the HAMP eligibility criteria for HAMP tier 1 or tier 2 are to be evaluated using a particular software, which automatically evaluates for both tier 1 and tier 2, and is to reflect the NPV results of modification under each tier.
DOT directives implementing HAMP provide that within 30 days from the date that an initial package is received from a person applying for a HAMP modification, and if the borrower’s documentation is complete, the servicer must either “[s]end the borrower a Trial Period Plan Notice[,] or . . . [m]ake a determination that the borrower is not eligible for HAMP and communicate this determination to the borrower in accordance with the Borrower Notice guidance . . . .” (Making Home Affordable, HAMI] Supplemental Directive 10-01 at 3 [Jan. 28, 2010].)
B, The Parties
In the present case, there is a trust that holds the legal title to the Rodriguez loan. US Bank acts as trustee on behalf of the trust. Trustees seldom exercise any meaningful day-to-day authority over a loan. There are also investors in the trust, who have a beneficial ownership interest in a loan and its proceeds. Wells Fargo is both a mortgage lender and a mortgage loan servicer. As the loan servicer, Wells Fargo stands in for the trust, the beneficial owners of the loans, and the investors in virtually all dealings with homeowners. It is the servicer to whom homeowners mail their monthly payments, the servicer who provides billing and tax statements for homeowners, and the servicer to whom a homeowner in distress must address a petition for a loan modification.
C. Rodriguez’s Efforts to Modify His Loan
CPLR 3408 (a) requires a mandatory settlement conference in every residential foreclosure action during which the plaintiff, through its servicer, and the defendant are to negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible. Here, the parties first appeared for a settlement conference on January 19, 2012. Rodriguez was unrepresented at the time. Rodriguez was informed that the financial documents that he had submitted were stale. He was allegedly directed to submit a new application package. Thereafter, the matter was adjourned to April 24, 2012. Subsequently, on March 22, 2012, Rodriguez submitted, through his Legal Services NYC-Bronx attorney, an application for a loan modification through HAMP
*661 On April 24, 2012, another schedule was agreed upon by the parties for the exchange of financial documents and information. On May 16, 2012, Rodriguez submitted updated financials to Wells Fargo, the loan servicer. At the third settlement conference, held on June 22, 2012, US Bank had not made any decision on the loan modification request, and the matter was adjourned to July 20, 2012 for a decision on the defendant’s application.
At the fourth settlement conference on July 20, 2012, a decision on the defendant’s loan modification application had not been made. Nonetheless, the bank’s representative, Shawn Malloy, indicated that the defendant would likely be denied for the HAMP tier 1 program because the monthly mortgage payment, including principal, interest, property taxes and hazard insurance, was supposedly less than 31% of the defendant’s gross monthly income. Defendant’s attorney pointed out that the bank was using an incorrect principal and interest payment to calculate the defendant’s application. He argued that Wells Fargo used an inappropriate figure of $1,338 per month. The correct amount was $1,681.99, which permits the defendant to clear the eligibility threshold and go on to the “waterfall” test. Defendant’s counsel then requested a tolling of interest retroactively to June 22, 2012 based on the plaintiffs failure to comply with the prior order. A decision was not made on the tolling request. The case was adjourned to August 17, 2012.
On or about August 10, 2012, US Bank sent a denial letter stating that “we were unable to reduce your principal and interest payment by 10% or more as required to comply with the terms of the [HAMP] program” (see affirmation of Jantarasami, exhibit E, denial letter). On August 12, 2012, defendant’s counsel, via email, responded to the denial letter as follows:
“Without addressing the accuracy of your client’s computations, be advised that the requirement your client refers to applies only in HAMP Tier 2 evaluations. We still have not received any Tier 1 determination, and per HAMP rules, a Tier 2 analysis is to be conducted (if at all) only after a borrower is considered and rejected for Tier 1. It is not a requirement of the Tier 1 Standard Modification Waterfall that the monthly PITIA be reduced by 10%. Please have your client run a HAMP Tier 1 analysis of my client as soon as possible. The next settlement conference in this matter is scheduled for 8/17/12 and your client’s attached letter does not *662 satisfy its obligation per the 7/20/12 Order, to issue a decision on my client’s HAMP application.” (Id., exhibit F.)
At the fifth settlement conference on August 17, 2012, the court was advised that Rodriguez had been denied both a HAMP modification and a traditional modification. The case was adjourned to September 7, 2012 for US Bank to respond to the concerns raised in the defendant’s email.
At the next settlement conference held on September 7, 2012, US Bank had still not responded to the August 12, 2012 email. Defendant’s counsel advised the court that he would appeal Wells Fargo’s decision. The court adjourned the matter to October 26, 2012, and set September 21, 2012 as a deadline for US Bank to respond with a detailed denial letter with any and all values used in the review to be sent in writing directly to the defendant’s attorney.
On September 18, 2012, US Bank resent the denial letter of August 10, 2012, purporting to respond “as requested at the 9/7/12 conference” (id., exhibit I). Defendant’s counsel wrote to the plaintiffs representative, advising that a tolling application would follow for failing to respond to his August 12, 2012 email.
On October 11, 2012, US Bank sent a new denial letter. Again, the proffered basis for the denial was exactly the same as previously raised by the plaintiff, namely, that the pre-modification principal, interest, taxes was allegedly less than 31% of the defendant’s gross monthly income. Once again, defendant’s counsel notified the plaintiff that it was relying on the wrong principal and interest figure (PI), i.e., the interest-only PI, instead of the fully amortizing PI. Plaintiff did not respond further, and at the seventh settlement conference, the defendant’s counsel was directed by Referee Josephine Bastone to submit his lack of good faith/tolling application on written motion. On November 30, 2012, the present motion was submitted to the court.
Discussion
As an initial matter, not before the court for decision is the efficacy or wisdom of Wells Fargo’s internal procedures for evaluating loan modification requests. The issue here is whether the facts as alleged by Rodriguez are sufficient to demonstrate a violation of CPLR 3408 (f)’s good faith requirement. The court finds that Rodriguez has demonstrated that the plaintiff violated its duty to negotiate in good faith during the settlement conference process.
*663 The New York Legislature has not established a definitive test to determine a lack of good faith. Generally, good faith under New York case law is an interpretative concept, “necessitating] examination of a state of mind” (Credit Suisse First Boston v Utrecht-America Fin. Co., 80 AD3d 485, 487 [1st Dept 2011], quoting Coan v Estate of Chapin, 156 AD2d 318, 319 [1st Dept 1989]). “Conduct such as providing conflicting information, refusal to honor agreements, unexcused delay, unexplained charges, and misrepresentations have been held to constitute ‘bad faith’ ” (Flagstar Bank, FSB v Walker, 37 Misc 3d 312, 317 n 6 [Sup Ct, Kings County 2012] [citations omitted]; see also One W. Bank, FSB v Greenhut, 36 Misc 3d 1205[A], 2012 NY Slip Op 51197[U] [Sup Ct, Westchester County 2012]). The test applied in Flagstar is tethered to the specific HAMP guidelines. Using the HAMP provisions as an appropriate benchmark of good faith in negotiations, as stated in Flagstar, would enable the bank to abide by both state and federal regulations (Flagstar, 37 Misc 3d at 317-318).
Another line of cases extended this concept to ascribe a lack of good faith to a plaintiff-mortgagee which has engaged in dilatory tactics and “failed to provide proper review and extend to defendant an affordable loan modification” (see Deutsche Bank Trust Co. of Am. v Davis, 32 Misc 3d 1210 [A], 2011 NY Slip Op 51238[U], *2 [Sup Ct, Kings County 2011]). The test applied in a third line of cases is the failure to “work out a loan modification, as required by statute, with a homeowner who is gainfully employed” and “earns income [sufficient] to sustain a modified payment” (see BAC Home Loans Servicing v Westervelt, 29 Misc 3d 1224[A], 2010 NY Slip Op 51992[U], *5 [Sup Ct, Dutchess County 2010]). However, a duty to negotiate in good faith does not guarantee that the negotiations will be fruitful (see e.g. JP Morgan Chase Bank, N.A. v Ilardo, 36 Misc 3d 359, 379 [Sup Ct, Suffolk County 2012]). Nor does the duty to negotiate in good faith compel either party to consent to the other’s position. Thus, the mere fact that the parties failed to reach a loan modification agreement does not necessarily mean that the duty to negotiate in good faith was breached. As stated by the Appellate Division, First Department in Wells Fargo Bank, N.A. v Van Dyke (101 AD3d 638, 639 [1st Dept 2012]), “[a]ny determination of good faith must be based on the totality of the circumstances.”
The court has an affirmative duty to “ensure that each party fulfills its obligation to negotiate in good faith and shall see that *664 conferences not be unduly delayed or subject to willful dilatory tactics so that the rights of both parties may be adjudicated in a timely manner” (Uniform Rules for Trial Cts [22 NYCRR] § 202.12-a [c] [4]). In an appropriate case, equity requires the cancellation of interest awarded to the mortgagee on an unpaid principal balance of a mortgage (see e.g. Citibank, N.A. v Van Brunt Props., LLC, 95 AD3d 1158, 1159 [2d Dept 2012]; Norwest Bank Minn., NA v E.M.V. Realty Corp., 94 AD3d 835, 837 [2d Dept 2012]).
As previously stated, where it is shown that a foreclosure plaintiff failed to follow HAMP guidelines, such failure violates the plaintiffs CPLR 3408 (f) duty to proceed in good faith. In this case, the court concludes that under the totality of the circumstances test, Wells Fargo violated its good faith obligation.
To begin, Wells Fargo attended and participated in all settlement conferences. Apparently another foreclosure prevention alternative, a traditional loan modification, was considered by Wells Fargo in the instant case. But it is unclear whether Wells Fargo’s dealings contemplated a loan modification. Specific eligibility and review procedures are delineated in the HAMP guidelines, which mandate how a servicer and borrower are to conduct themselves during the loan modification process. Participants, as well, in the mandatory settlement conference part must abide by those same guidelines.
Defendant’s counsel claims that he has studied the HAMP loan modification criteria, and noticed significant errors by Wells Fargo that affected his client’s eligibility for a loan modification. Conversely, Wells Fargo asserts reliance on a formula it uses to calculate HAMP modifications that was allegedly created by DOT, and imbedded in the computer program it uses to calculate HAMP modifications. However, strict adherence to internal guidelines, and not the HAMP guidelines, may not meet the requisites of “good faith.”
The question then becomes whether predetermined reliance on in-house standards requiring either the acceptance or rejection of a loan modification application, as opposed to a fact-sensitive and accommodating inquiry under the HAMP guidelines, is “good faith” sufficient to survive this CPLR 3408 (f) motion.
This court uses trained referees to handle the mandatory settlement conference part. Following the instruction of Referee Bastone, on August 17, 2012, to address Rodriguez’s concerns and provide him with a more detailed explanation for the denial *665 of his loan modification application, Wells Fargo agreed to respond to Rodriguez’s request. However, the plaintiffs last letter regarding the defendant’s modification application failed to comply with the court’s directive (see Wells Fargo Bank v Salyamov, 2012 NY Slip Op 33045[U] [Sup Ct, Richmond County 2012]).
Moreover, Rodriguez’s representation that Wells Fargo inexplicably refused to evaluate him under both the tier 1 and tier 2 programs, which the loan servicer must do under the HAMP guidelines, stands unchallenged by Wells Fargo. Rodriguez certainly has the right to be evaluated under tier 1 and tier 2. Rodriguez, as well, has the right to examine the criteria used by Wells Fargo to approve or reject his application. He also has the right to ask Wells Fargo to consider using an appropriate principal and interest figure. These are not unreasonable requests. Wells Fargo having agreed to the terms of the HAMP guidelines was under an obligation to honor those requests. Wells Fargo, however, ignored those rights and requests. Thus, Wells Fargo categorically refused to comply with the current HAMP directives, and work toward a possible loan modification in “good faith.” Just because Wells Fargo followed its internal guidelines does not immunize its conduct from court review or sanctions.
Conclusion
In the interests of equity, it is hereby ordered that the defendant Jorge Luis Rodriguez’s motion for an order pursuant to CPLR 3408 (f) and Uniform Rules for Trial Courts (22 NYCRR) § 202.12 finding the plaintiff in violation of its duty to negotiate in good faith during the settlement conferences is granted; and it is further ordered that the plaintiff U.S. Bank, N.A., and its loan servicer, Wells Fargo, are barred from collecting any interest, unpaid late fees, or attorneys’ fees incurred from July 20, 2012 (the date that the defendant received the HAMP denial in court) until the defendant is given a final detailed determination on his loan modification application, after review of all possible HAMP options for which he may be eligible; and it is further ordered that once a final review and determination are completed, the parties are directed to contact the mandatory settlement conference part to schedule a conference; and it is further ordered that a bank representative fully familiar with the file and with full authority to settle the matter appear at the next conference; and it is further ordered that appearing *666 counsel must be fully authorized to dispose of the case as required by statute (see CPLR 3408 [c]); and it is further ordered that failure of the plaintiff, and its loan servicer, to comply with this order may result in further sanctions, including exemplary damages and loss of the privilege of appearing by local counsel in all foreclosure settlement conferences conducted in Bronx County.