[997 NYS2d 594]

Bank of America NA, Successor by Merger to BAC Home Loan
  Servicing, LP, Formerly Known as Countrywide Home
  Loans Servicing LP, Plaintiff, v Milan Lucic et al., De-
  fendants.

Supreme Court, New York County, July 29, 2014

### APPEARANCES OF COUNSEL

*Fein, Such & Crane, L.L.P.*, Rochester (*V.S. Vilkhu* of counsel), for Milan Lucic, defendant.

*City Bar Justice Center, Lawyers' Foreclosure Intervention Network*, New York City (*Lynn Armentrout* of counsel), for plaintiff.

### OPINION OF THE COURT

PETER H. MOULTON, J.

In this mortgage foreclosure action, defendant Milan Lucic (defendant or Lucic), a 68-year-old owner of a two bedroom Manhattan condominium unit, moves for an order tolling interest.[1] Defendant was originally pro se, but the Lawyers' Foreclosure Intervention Network of the City Bar Justice Center agreed to represent him in March 2013. According to the note attached to the complaint, the interest rate is 6.5%, which is relatively high in today's economy. Although not relevant to this motion, defendant fell into arrears as a result of (1) the downturn of his family operated business, which broadcasts radio and television programs for the east coast Yugoslavian community, and (2) his own, and his daughter's, serious and disabling health problems.

Plaintiff Bank of America NA (plaintiff or Bank of America or the bank) opposes the motion, maintaining that "[p]laintiff provided a review of a HAMP [Home Affordable Modification Program] application and a commensurate denial pursuant to Freddie Mac HAMP guidelines." To demonstrate good faith, plaintiff (through an attorney's affirmation) refers to documentary evidence in 2012 and early 2013. Conspicuously absent from the opposition is any response to defendant's arguments, based on documentary evidence in 2010 and 2011.[2]

Interest is tolled for the period of April 1, 2010 through April 3, 2012. During this period, the evidence demonstrates plaintiff's extensive delays in processing defendant's HAMP application and in notifying defendant about alternatives, such as a reverse

---

1. In this decision, as well as in the case law, the term tolling interest is used interchangeably with, and is synonymous with, cancelling interest or barring the collection of interest.

2. The motion is being made to me as I was previously the supervising judge of the Mortgage Foreclosure Part and I have retained the cases over which I have previously presided if they relate to settlement in the Mortgage Foreclosure Settlement Part.

mortgage, as well as plaintiff's duplicative and conflicting requests for documentation, after acknowledging receipt of documents. During this period the evidence reflects defendant's exhaustive and vigilant efforts in contacting plaintiff, and in sending, and then re-sending, documents. Yet inexplicably, a denial was issued dated January 24, 2011 based on defendant's failure to provide *unspecified* documents. The letter dated July 15, 2011 regarding defendant's appeal stated without explanation that defendant's loan was ineligible.[3] It was not until the letter dated April 3, 2012 that the bank denied defendant's application for a HAMP modification based on the loan-to-value ratio of the property.[4]

Arguments

Defendant asserts that plaintiff violated CPLR 3408, loss mitigation guidelines,[5] and equity, by failing to timely and properly process defendant's application for a loan modification, by making repetitive document requests, and by "stringing" defendant along for years.[6]

It was not until February or March 2011 that plaintiff informed defendant of the possibility of obtaining a reverse mortgage. Because defendant's HAMP application was being processed in 2010 and 2011, he did not apply for a reverse

---

**3.** Defendant has kept voluminous documents spanning back over four years; based on the court's experience, most borrowers do not keep such meticulous records and are at a distinct disadvantage in proving a lender's or servicer's lack of compliance with HAMP.

**4.** Defendant asserts that this is not a proper basis to deny a modification under HAMP because loan-to-value ratio is not found in the HAMP handbook. Section 1.2 of Chapter II of the Making Home Affordable Handbook provides that "[s]ervicers may not refuse to evaluate an otherwise eligible borrower based on the LTV ratio of the mortgage loan except to the extent it impacts the NPV evaluation or the principal forbearance limit described in Section 6.6." Because this argument was raised for the first time in reply, it will not be addressed.

**5.** Because Freddie Mac has developed its own rules and regulations regarding HAMP processing, which were often modified, defendant asserts that he cannot determine precisely which rules on income verification, loan modification timelines, and underwriting were in effect at each stage of the proceeding. However, defendant points out that under HAMP, decisions are generally to be made within 30 days of receipt of a final application package. For its part, plaintiff does not cite to the applicable timelines in effect during this proceeding.

**6.** Defendant also asserts that he has demonstrated that four payments totaling $9,023 were never credited to the loan. In opposition, plaintiff attaches exhibit L which is a chart explaining the application of funds received by plaintiff and applied to the loan. It is not clear whether amounts have been misapplied, as defendant does not address the issue in reply.

mortgage until 2012.[7] With the approved reverse mortgage of $370,000, defendant's $26,000 in savings, and a Mortgage Assistant Program grant of $25,000 (which counsel asserts defendant could receive), Lucic states that he could now offer $421,000 to satisfy the debt. That would exceed, defendant argues, the amount he owed when the foreclosure action was commenced in February 2012 ($387,700.76 in principal and $25,200 in interest, totaling $412,900.96).[8]

Plaintiff correctly counters that it is not required to accept a shortfall, which plaintiff states is 16% ($456,366 owed as of January 2013 minus $370,000 the amount of the reverse mortgage) and that CPLR 3408 "does not mandate that Defendant be offered a modification." Plaintiff points to its attendance at all settlement conferences and to letters counsel addressed to defendant in 2012 and early 2013 regarding payoff figures. Plaintiff points to an April 3, 2012 denial letter which states,

> "Your loan is not eligible for a modification because the loan-to-value (LTV) ratio on your property (calculated as the total principal amount you owe on the loan divided by our current estimate of the value of your home) must be 80% or higher to qualify for the program."

Plaintiff also asserts that the court cannot toll interest as that would violate the Contract Clause of the United States Constitution (US Const, art I, § 10, cl 1) and case law including *Wells Fargo Bank, N.A. v Meyers* (108 AD3d 9 [2d Dept 2013]). Plaintiff seeks release from the Mortgage Foreclosure Settlement Part.

Defendant correctly counters that plaintiff distorts *Meyers* and that interest may be tolled because foreclosure is equitable in nature. Defendant points to a "two-year run-around" for which voluminous evidence is attached.

Discussion

Plaintiff incorrectly asserts that a decision to toll interest violates the Contract Clause of the United States Constitution. Foreclosure is an equitable remedy which triggers the equitable powers of the court (*Notey v Darien Constr. Corp.*, 41 NY2d

---

**7.** According to the July 10, 2013 affidavit of a managing member of Coltrain Funding Group, a mortgage broker firm, defendant had qualified for a reverse mortgage and the company waived all origination fees. According to a letter dated November 27, 2012, sent from defendant's counsel to plaintiff's counsel, defendant had been pre-qualified for a reverse mortgage in the fall of 2012. Documents regarding the reverse mortgage dated July 21, 2012 are attached as exhibit BB.

**8.** Plaintiff's counsel's letter, dated January 25, 2012, reflects that, as of that date, $421,506.97 was owed.

1055 [1977]; *Norwest Bank Minn., NA v E.M.V. Realty Corp.*, 94 AD3d 835 [2d Dept 2012]).[9] Although a court cannot force parties to reach an agreement and cannot bind parties to terms to which the parties never agreed (*Wells Fargo Bank, N.A. v Meyers*, 108 AD3d at 20), "[o]nce equity is invoked, the court's power is as broad as equity and justice require" (*Mortgage Elec. Registration Sys., Inc. v Horkan*, 68 AD3d 948, 948 [2d Dept 2009]). While *Meyers* found that the lower court's decision to bind the parties to a permanent HAMP modification (to which the bank never agreed), would violate the Contract Clause of the United States Constitution, the Court also noted that the Contract Clause "is not an absolute and utterly unqualified restriction." (108 AD3d at 22.) Rather, *Meyers* concluded that "courts must employ appropriate, permissible, and authorized remedies, tailored to the circumstances of each given case." (*Id.* at 23.)

Appellate courts have not hesitated to toll interest as a permissible remedy tailored to the circumstances of a particular case (*see e.g. Dayan v York*, 51 AD3d 964 [2d Dept 2008] [where plaintiff was substituted in place of a bank in a foreclosure action after purchasing the mortgage, it was inequitable and unconscionable for defendant to be charged accrued interest and penalties given plaintiff's delay in prosecuting the foreclosure action between 1995 and late 2001]; *Norwest Bank Minn.*, 94 AD3d 835 [tenant, who received an assignment of the mortgage and a judgment lien from a bank, could not recover interest on the unpaid principal balance of a mortgage in light of its deliberate acts in triggering the foreclosure action]; *Danielowich v PBL Dev.*, 292 AD2d 414 [2d Dept 2002] [tolling interest for the five months mortgagee took to move to confirm referee's report]; *Dollar Fed. Sav. & Loan Assn. v Herbert Kallen, Inc.*, 91 AD2d 601 [2d Dept 1982] [fixing the date of computation for amounts due at two years prior to date of referee's report, due to plaintiff's unconscionable delay]; *South Shore Fed. Sav. & Loan Assn. v Shore Club Holding Corp.*, 54 AD2d 978, 978 [2d Dept 1976] ["If the mortgagee is responsible for the delay, it should forfeit the interest and other charges"]).

Lower courts have also tolled interest (*see e.g. US Bank N.A. v Gioia*, 42 Misc 3d 947 [Sup Ct, Queens County 2013] [interest tolled from the commencement of the foreclosure action until

---

**9.** An action based on a breach of contract results in a money judgment. A foreclosure action results in the sale of the property. The distinction is important.

further order based on bank's unreasonable and unexcused delay]; *U.S. Bank, N.A. v Rodriguez,* 41 Misc 3d 656 [Sup Ct, Bronx County 2013] [interest, late fees and attorney's fees tolled after the date of a HAMP denial until the borrower received a final detailed determination and after review of all HAMP options]; *U.S. Bank, N.A. v Shinaba,* 40 Misc 3d 1239[A], 2013 NY Slip Op 51484[U] [Sup Ct, Bronx County 2013] [interest, late fees and attorney's fees tolled for over two years as a result of the bank's failure to negotiate in good faith, including long and unexcused delays]; *Deutsche Bank Trust Co. of Am. v Davis,* 32 Misc 3d 1210[A], 2011 NY Slip Op 51238[U] [Sup Ct, Kings County 2011] [sanctions due to delay attributable to the bank included cancellation of 50% of two years of interest, accruing from the date of the first HAMP conference]; *Wells Fargo Bank, N.A. v Ruggiero,* 39 Misc 3d 1233[A], 2013 NY Slip Op 50871[U] [Sup Ct, Kings County 2013] [interest and attorney's fees cancelled for over three years from the date of the first conference until the date of the order in light of the bank's unexplained delays, unexplained charges, and misrepresentations]).

## The Evidence

The evidence in this action supports the tolling of interest for the specified period. The unrebutted evidence demonstrates the following:

• In early 2010, Lucic contacted plaintiff who explained that defendant may qualify for a loan modification under HAMP. The customer service representative told Lucic that the bank would send him the application forms. The representative asked Lucic to send proof of his illness and a hardship letter (Lucic aff ¶ 12).

• On or about February 16, 2010, Lucic faxed a letter to the "HOP Department" accompanied by documentation (including a hardship letter, medical records, and a request to the bank to temporarily suspend his mortgage payments while his loan was being approved for a modification). In his letter he noted, *"I have applied with Bank of America for modification of my loan, but I still have not received a response. I did not get [an] application"*[10] (Lucic aff ¶ 13, exhibit A).

• In early March 2010, after calling plaintiff frequently, defendant was told to submit additional information. Accordingly, defendant sent two separate faxes to Bank of America (one containing 39 pages, and another containing 23 pages) with ad-

---

10. All emphasis has been added by the court.

ditional documentation in support of his application. Bank of America acknowledged receipt of those documents by a letter dated March 12, 2010, addressed to Lucic, which stated: *"Your request has been received . . . We will provide a more complete response within (20) business days"* (Lucic aff ¶ 14, exhibit C).

• Instead of getting a "more complete response" on March 19, 2010, Lucic received a notice of intent to accelerate from Bank of America that stated as follows: "The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this letter is as follows: $5,157.70" (Lucic aff ¶ 15, exhibit D).

• Upon receiving that letter, Lucic states that he sent additional documents (and some previously submitted documentation) to Bank of America to accelerate the processing of his loan modification application. By a letter dated April 14, 2010, Bank of America responded to Lucic as follows: *"Your request for assistance, along with your personal financial information, has been received . . . We do appreciate your patience in allowing us this time to review your loan for possible modification"* (Lucic aff ¶ 16, exhibit E).

• By letter dated April 22, 2010, Bank of America informed defendant that he should fax various documents to the bank, including a request for modification and affidavit and bank statements and tax returns. Lucic states that he had already submitted the requested documentation to Bank of America in February 2010 (Lucic aff ¶ 17, exhibit F).

• On or about June 15, 2010, Lucic received another letter from Bank of America that stated *that his loan modification request and personal financial information had been received by the bank* (Lucic aff ¶ 18, exhibit G).

• On July 1, 2010, Lucic received a letter that stated as follows: "You may be eligible for the Home Affordable Modification Program." The letter went on to outline the criteria needed to qualify for the program without mentioning the fact that Lucic had previously submitted a loan modification application. The letter attached a checklist which referred to signing a request for modification and affidavit and providing other documents. When defendant subsequently called Bank of America to clarify the situation, he states that he was told that the documents which he had submitted likely had not yet been entered into the system, *so there was no need for him to re-send them* (Lucic aff ¶ 19, exhibit H).

- In the ensuing weeks leading into August 2010, Lucic states that he repeatedly called Bank of America to check on the status of his application (Lucic aff ¶ 20).

- On or about September 21, 2010, Lucic received a letter from Bank of America stating that he was missing several documents, including his most recently filed federal tax return, two most recent pay stubs, a profit and loss statement if self-employed and documentation concerning any rental income he may have been receiving. Defendant states that he called the bank and explained that *he had previously submitted his tax returns to Bank of America on multiple occasions, and that he did not submit pay stubs because he was not currently employed, but that he had previously submitted a profit and loss statement. Nevertheless, defendant resubmitted his tax returns as well as a profit and loss statement to Bank of America in a pre-paid envelope* (Lucic aff ¶ 21, exhibit I).

- On or about September 29, 2010, Lucic received a letter stating that his loan was enrolled in a "Borrowers Protection Plan" which allowed for "the monthly principal and interest payment, as well as the Borrowers Protection Plan fee" to be "cancelled for up to 12 months if a Protected Borrower has experienced a qualifying event." *Defendant responded to the letter by calling Bank of America, who instructed him to submit a new hardship letter*. He did so on October 8, 2010 (Lucic aff ¶ 22, exhibits J-K).

- Lucic submitted 18 pages to Bank of America via fax on November 12, 2010 (Lucic aff ¶ 23).

- Having received no other word from Bank of America concerning his pending loan modification application, Lucic sent another hardship letter to Bank of America on November 23, 2010, accompanied by tax returns and the Internal Revenue Service Form 4506T and other information (Lucic aff ¶ 24, exhibits J-K).

- On or about December 14, 2010, Bank of America sent a letter to Lucic stating as follows: *"We are pleased to let you know that we have received your documents. We are reviewing them to determine if your loan is eligible so you can begin the process toward a permanent loan modification"* (Lucic aff ¶ 25, exhibit N).

- On or about January 24, 2011, Bank of America sent Lucic a letter stating as follows: *"Your loan is not eligible for a Home Affordable Modification because you did not provide us with the*

*documents we requested.''* On January 28, 2011, defendant received a confirmation that documents had been received. After receiving the denial letter he called the bank and was told to send new documents. He faxed 32 pages on January 31, 2011 (Lucic aff ¶ 26, exhibits O-Q).

• Around February or March of 2011, Bank of America notified Lucic that he may qualify for a reverse mortgage (Lucic aff ¶ 28).

• By letter dated March 25, 2011, Bank of America sent Lucic a default notice stating, "[Y]our home loan is 295 days in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home. You can cure this default by making the payment of $16,599.88." In response to the letter, defendant called a customer service representative and stated that he remained interested in the modification process and alternatively was interested in obtaining a reverse mortgage (Lucic aff ¶ 29, exhibit S).

• By letter dated July 15, 2011, Bank of America informed defendant of the following: "We have reviewed your appeal to our decision that your loan is not eligible . . . Unfortunately, this letter is to inform you that your loan is still not eligible for the program." No further reason or explanation was given with respect to the grounds for the denial (Lucic aff ¶ 30, exhibit T).

• Immediately after receiving the July 15, 2011 letter, defendant called the bank and was told to send in more documents. He faxed 16 pages of documents to Bank of America on July 20, 2011 and an additional 65 pages of documents two days later, on July 22, 2011 (Lucic aff ¶ 31, exhibit V).

• Bank of America responded to the faxes *by a letter dated July 25, 2011 which stated the bank would respond in 20 business days* and August 2, 2011 confirming receipt of defendant's request regarding a mortgage modification (Lucic aff ¶ 32, exhibits W-X).

• Lucic subsequently resumed full monthly payments on his account. In turn, Bank of America sent him notices in August, October, and November 2011 acknowledging that it had received the funds, but stated that defendant's outstanding balance was "24,950.99" (Lucic aff ¶ 33, exhibit Y).

• By letter dated November 17, 2011, Bank of America sent a letter to Lucic inviting him to an outreach event for homeowners struggling to make mortgage payments to be held in

Brooklyn, New York on December 2, 2011. Lucic attended the outreach event, and at three in-person meetings with representatives from Bank of America, he submitted the same loan documentation that he had previously submitted with his loan modification application (Lucic aff ¶ 34, exhibits Z, AA).

• In February 2012, Bank of America filed this foreclosure action against Lucic. By letter dated April 3, 2012, plaintiff denied the modification because the loan-to-value ratio was not 80% or higher (exhibit H to Vilkhu affirm in opp). The first settlement conference was held on June 20, 2012.

The above-cited evidence demonstrates that equity requires that interest should be tolled based on (1) plaintiff's extensive delays in processing defendant's application and in notifying defendant about HAMP alternatives, such as a reverse mortgage, (2) plaintiff's duplicative requests for documentation, even after acknowledging receipt of documents multiple times, and (3) plaintiff's conflicting instructions to defendant by phone on or about July 1, 2010 and conflicting acknowledgments by letter that documents have been received only to subsequently issue a denial based on *unspecified* missing documents.[11] The evidence further reflects that defendant exhaustively, vigilantly and repeatedly contacted plaintiff, and sent and re-sent documents. Plaintiff fails to rebut, or even speak to, defendant's affidavit and documentary evidence during the time period for which the court has tolled interest. The evidence demonstrates a bureaucratic maze which cannot be navigated by the very individuals for whom HAMP and other foreclosure alternatives were intended. Instead of forcing Lucic to navigate this maze, plaintiff could have informed him of the reverse mortgage opportunity earlier when the arrears were not as high. Had plaintiff pursued communication instead of obfuscation, defendant may have applied for, and been approved for, a reverse mortgage which would have averted foreclosure. However, even if that is not the case, and the property must ultimately be sold, it is nevertheless equitable to toll interest for the specified period (*see e.g. Dayan v York*, 51 AD3d 964 [2008]; *Norwest Bank Minn., NA v E.M.V. Realty Corp.*, 94 AD3d 835 [2012]).

It is hereby ordered that interest is tolled for the period of April 1, 2010 through April 3, 2012; and it is further ordered

---

11. The denial letter dated January 24, 2011, based on the purported failure to provide *unspecified* documents, is undermined by the bank's letters acknowledging receipt of documents on April 14, 2010, June 15, 2010, December 14, 2010, and January 28, 2011—only four days after the denial.

that plaintiff's request for a release from the mortgage foreclosure settlement part is denied; and it is further ordered that plaintiff recalculate the amount owed, in light of the court's tolling of interest, and notify defendant of that amount within 15 business days of today's date; and it is further ordered that the parties contact the court for a further conference to discuss whether foreclosure alternatives exist or whether the matter should be remanded out of the Mortgage Foreclosure Settlement Part.