OPINION OF THE COURT
Arlene P. Bluth, J.
Plaintiff’s motion to confirm the referee’s oath and report, to grant a judgment of foreclosure and sale and to appoint a substitute referee is granted. Plaintiff is directed to settle order on notice.
The cross motion by nonparty East Fork Capital Equities, LLC to dismiss the complaint is denied.
Background
The unusual circumstances of this foreclosure action arise out of a mortgage held by plaintiff covering 300 West 135th Street, unit 5N, New York, New York. According to plaintiff, a referee was appointed by the court on September 2, 2009. The referee, Mr. Papastrat, issued his report on February 9, 2010 and found that plaintiff was due $377,468.81 as of December 31, 2009.
*851 Plaintiff claims that on February 4, 2016, it was advised that the referee could no longer carry out his responsibilities and, therefore, plaintiff asks this court to appoint a substitute referee to sell the property.
Three years after the referee issued his report in February 2010, without plaintiff doing anything more in this case, the Board of Managers of Strivers Gardens Condominium initiated its own foreclosure action against defendant Peters for unpaid common charges (see Board of Mgrs. of Strivers Gardens Condominium v Peters, Sup Ct, NY County, Schecter, J., index No. 153717/13). Unlike plaintiff, the Board prosecuted its case and secured a judgment of foreclosure and sale, and the Board was the successful bidder at a public auction. The Board then assigned its bid to East Fork, which assumed all liabilities under the terms of the sale, including payment of the purchase price of $113,413.30. East Fork claims it now retains title to the subject premises and, thus, has an interest in defending this action.
East Fork claims that defendant Peters’ default should be vacated pursuant to CPLR 5015 (a) and that the instant action should be dismissed because defendant Peters was never properly served. East Fork insists that Peters was serving a life sentence at Clinton Correctional Facility and had not resided at the premises, where he was allegedly served, since at least 2006.
East Fork also argues that this case should be dismissed because plaintiff failed to move for a default judgment within one year as required by CPLR 3215 (c). East Fork claims that it can raise these defenses because, as the current owner of the premises, it is an interested person within the meaning of CPLR 5015 (a) and a successor in interest under CPLR 1018.
In opposition to this cross motion, plaintiff claims that East Fork cannot raise defenses on behalf of Peters because it is not a party in this action, East Fork had constructive notice of this action due to plaintiff’s notice of pendency and East Fork failed to file a motion to intervene before making the instant motion. Plaintiff claims it had no knowledge of the Board’s foreclosure action.
Plaintiff further claims that East Fork should not be permitted to intervene because East Fork waited seven months before bringing this motion. Plaintiff further insists that this matter was released from the Foreclosure Settlement Part on September 12, 2011 and that it filed its motion for judgment of foreclo *852 sure and sale on May 2, 2016. On the service issue, plaintiff claims that Peters was properly served and attaches an affidavit of service detailing its efforts.
In reply, East Fork acknowledges that it took title to the premises subject to the existing mortgage, but that it, as an interested person, can move to vacate the default of defendant Peters, who is a necessary party to this action.
Service/Vacating the Default
Plaintiff does not dispute that defendant Peters has been in a correctional facility since November 13, 2006 (see affirmation of East Fork’s counsel, exhibit C). Plaintiff’s affidavit of service states that on May 13, 2009, the summons and complaint was left with Giuseppe Conigliaro (a concierge), who verified that the recipient lived at the premises and that a copy was also mailed to the same address (id., exhibit D).
CPLR 308 (2) provides that personal service may be made by “delivering the summons within the state to a person of suitable age and discretion at the . . . dwelling place or usual place of abode of the person to be served.” Because it is undisputed that the premises were not his dwelling place, the question is whether the premises were Peters’ usual place of abode. At the time of the purported service, Peters had been imprisoned for over 2V2 years, serving a sentence of 40 years to life for murder.
The only published appellate case that this court could find on this issue is Montes v Seda (208 AD2d 388 [1st Dept 1994]). In Montes, the First Department held that service of a copy of the summons and complaint to the defendant’s daughter at the address listed on her driver’s license was sufficient even though defendant was serving an 18-month prison sentence at the time of service (id.). The lower court’s ruling stressed that prison was not defendant’s usual place of abode because “[a] degree of permanence and stability cannot be ascribed to a location to which the sovereign involuntarily places a person (at least in cases not involving long-term imprisonment)” (Montes v Seda, 157 Misc 2d 895, 898 [Sup Ct, NY County 1993]).
Unlike the defendant in Montes, Peters faces a 40-years-to-life sentence, which clearly approaches the degree of permanence and stability implied in the term “usual place of abode” (see Feinstein v Bergner, 48 NY2d 234, 239 n 3 [1979]). “An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice rea *853 sonably calculated, under all . . . circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections” (Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950]). Service completed by mail to a prisoner’s address listed in the Secretary of State’s records is improper where plaintiff knew that the defendant was incarcerated (Robinson v Hanrahan, 409 US 38 [1972]).
The facts of this case fall in between the factual scenarios in Montes and Robinson. Although there is no allegation that plaintiff knew that defendant was incarcerated at the time of service, the undisputed fact is that Peters did not live there, had not lived there for more than two years and there is no indication that he would ever return. Apartment unit 5N at 300 West 135th Street was neither Peters’ residence nor his usual place of abode and service there was not reasonably calculated to inform Peters of the instant action.
Further, plaintiff presented no evidence in the affidavit of service that the process server attempted to gain access to the fifth floor so he could serve defendant Peters at his former apartment or that the doorman refused to grant the process server permission to enter the building. Plaintiff only claims the doorman confirmed that the defendant lived at the building. Under these facts, the court is unable to find that delivery to a doorman in the lobby of defendant’s former residence satisfies due process (see McCormack v Goldstein, 204 AD2d 121, 122 [1st Dept 1994], lv denied 85 NY2d 801 [1995]; see also Soils Eng’g Servs. v Donald, 258 AD2d 425 [1st Dept 1999]). Interested Person
CPLR 5015 (a) provides that
“[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of. . .
“4. lack of jurisdiction to render the judgment or order.”.
“Clear from its use of the words ‘any interested person’ within a dozen words of the phrase ‘relieve a party’ is it that to avail himself of the remedy provided by that section one need not have been a party to the original action” (Oppenheimer v Westcott, 47 NY2d 595, 602 [1979] [emphasis omitted]). “To seek relief from a judgment or order, all that is necessary is that *854 some legitimate interest of the moving party will be served and that judicial assistance will avoid injustice” (id. [emphasis added]).
“Foreclosure is an equitable remedy which triggers the equitable powers of the court” (Bank of Am. NA v Lucic, 45 Misc 3d 916, 919 [Sup Ct, NY County 2014]).
The court finds that East Fork failed to establish that it is an interested person under the meaning of CPLR 5015 because it has not demonstrated that a legitimate interest would be served through its requested relief. East Fork admits that it acquired the subject property after a foreclosure sale in litigation initiated by the Board. This court takes judicial notice of the judgment of foreclosure and sale in that matter, which states that the foreclosure is subject to the mortgage held by plaintiff (see Board of Mgrs. of Strivers Gardens Condominium v Peters, Sup Ct, NY County, Schecter, J., index No. 153717/13; NY St Cts Elec Filing Doc No. 47 at 9). Relieving East Fork of its burden to pay a mortgage it knew about would only effectuate a windfall for East Fork.
Even if East Fork had a legitimate interest, relieving the property of plaintiff’s mortgage would not avoid injustice. Instead, it would create injustice as plaintiff would likely lose its entire investment if the court were to dismiss this case.[1] Peters has already lost title to the property and East Fork’s motion would not remedy plaintiff’s improper service on Peters. The purpose of proper service is to give a defendant notice of a litigation so he or she can mount a defense. Because Peters has already lost the property, dismissing this matter would only help East Fork avoid a senior lien on a property it purchased with full knowledge of that lien. It would not allow Peters to defend against plaintiff’s claims or reach a settlement. Although Peters would receive a nominal benefit, the expungement of the note, that would appear to be of little practical value to someone serving a life sentence.
Unlike other courts that have vacated default judgments or orders pursuant to CPLR 5015 (a) (see Lane v Lane, 175 AD2d 103 [2d Dept 1991] [holding that it was in the interest of justice to vacate a default that was allegedly obtained through collusion]; Nachman v Nachman, 274 AD2d 313 [1st Dept 2000] *855 [vacating a divorce judgment based on sufficient evidence of fraud and misrepresentation]), it is not an injustice for a mortgage to stay on a property against a subsequent purchaser who bought specifically “subject to” the senior lien.
Conclusion
There are numerous ways in which plaintiff could have avoided the instant scenario. As examples, plaintiff could have (1) moved for the appointment of a guardian ad litem to represent the defaulting defendant’s interests in this action, (2) completed the instant foreclosure action, which has now dragged on for seven years without opposition, before the Board started or resolved its foreclosure action, (3) investigated the whereabouts of defendant Peters by contacting the Board, reviewing public records or performing Internet searches, (4) paid the common charges and prevented the Board from obtaining a lien, or (5) periodically monitored its investment for any other lis pendens or actions filed against the property. Any of these steps would have prevented the instant motion practice.[2]
Accordingly, the parties are directed to settle an order on notice consistent with this decision with the order section of the motion support office (room 119) at 60 Centre Street and providing that plaintiff’s motion to confirm the referee’s report, for a judgment of foreclosure and sale, and to appoint a substitute referee is granted and East Fork’s cross motion to dismiss is denied.

. This assumes that if the court were to dismiss this action, plaintiff would be unable to bring another action because the statute of limitations has run.

. The court also notes the peculiar Mortgage Foreclosure Part conference order (affirmation of plaintiff’s counsel in opposition, exhibit D) which says that defendant appeared by Natalie Peters. The court wonders what settlement discussions could occur, if any did, when defendant was incarcerated. Plaintiff does not explain who Natalie Peters is and what relation she might have to defendant Peters.